In the

# United States Court of Appeals

## For the Seventh Circuit

No. 10-1036

KATIE LINDSEY,

*Plaintiff-Appellant,*

*v.*

WALGREEN CO.,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 1:08-cv-03547—**Harry D. Leinenweber**, *Judge.*

ARGUED JULY 8, 2010—DECIDED AUGUST 11, 2010

Before BAUER, RIPPLE, and KANNE, *Circuit Judges.*

PER CURIAM. Katie Lindsey was 53 years old when Walgreens fired her from her job as a staff pharmacist. She sued the company under the Age Discrimination in Employment Act ("ADEA"), *see* 29 U.S.C. § 623(a)(1), but the district court granted summary judgment against her. Lindsey appeals, and we affirm the judgment.

Lindsey began working for Walgreens as a staff pharmacist in 1995. After a few years she was promoted to

pharmacy manager by Connie Jenkins, the district pharmacy supervisor. But before long the company received complaints about Lindsey from her coworkers. Lindsey admitted to Jenkins that she had been filling expired prescriptions and offering unauthorized discounts, among other violations of company policy. Jenkins determined that Lindsey was not fit to continue in a managerial position, so she demoted her to staff pharmacist and transferred her to another store. She also warned Lindsey that she would be fired the next time she failed to follow pharmacy procedures.

Lindsey was not welcomed warmly by her new coworkers. She testified at her deposition that they called her "lazy" and "slow" and questioned why Walgreens repeatedly exiled "old," "demoted" pharmacists to their store. She said that she was even subject to disparaging remarks about her age and abilities from Akua Bamfo-Agyei, the pharmacy manager and her direct supervisor.

Lindsey lasted only a few months at her new store. The events leading to her termination began to unfold when a customer presented Bamfo-Agyei with a prescription for fluconazole, a drug used to treat fungal infections. The pharmacy database alerted Bamfo-Agyei to a potentially dangerous interaction between fluconazole and simvastatin, another medication that the customer was taking to treat high levels of cholesterol. According to the database, taking the two medications simultaneously produced a high risk of rapid muscle weakness and wasting. Concerned for the customer's safety, Bamfo-Agyei telephoned the prescribing doctor but could not

reach him. Although the prescription had already been entered in the database, Bamfo-Agyei placed it in the "exception queue" and added a notation that she was waiting to hear back from the customer's doctor about a potentially serious drug interaction.

Lindsey relieved Bamfo-Agyei on duty later that day. According to Bamfo-Agyei, before she left the pharmacy she told Lindsey that she was waiting for a call from the customer's doctor; Lindsey, however, denies that Bamfo-Agyei told her any such thing. But the parties agree that, less than an hour after Bamfo-Agyei left, Lindsey first entered a notation in the database that she had "reviewed patient history" and then filled the customer's prescription. This process required her to override the database's drug-interaction warning. Lindsey testified that she could not recall whether the prescription was in the "exception queue" when she filled it and that in any event she did not see a notation that Bamfo-Agyei was awaiting a call from the customer's doctor. But she also acknowledged being aware of a potentially serious interaction between the two drugs. She decided to override the database's warning, she explained, because she thought that the customer's condition required immediate attention and that the risk of a serious drug interaction was minimal. The next day the customer's doctor returned Bamfo-Agyei's call and told her not to fill the prescription. When Bamfo-Agyei discovered that Lindsey had already dispensed fluconazole to the customer, she reported the incident to Jenkins.

Jenkins fired Lindsey after investigating the incident and concluding that she had violated company policy. Jenkins reviewed the database record and independently analyzed the customer's medical history and the potential interaction between the two drugs. She concluded that Lindsey should not have filled the prescription. In particular she found that Lindsey had violated company policy by overriding the database's drug-interaction warning and that Lindsey had acted recklessly by ignoring Bamfo-Agyei's notation and filling the prescription before hearing back from the customer's doctor.

Lindsey filed this lawsuit claiming that Walgreens fired her because of her age. *See* 29 U.S.C. § 623(a)(1). She presented several theories of discrimination to the district court, including the cat's paw theory. The term "cat's paw" refers to an unbiased decisionmaker who is being used as a tool by a biased employee. Lindsey argued that Jenkins was a cat's paw for Bamfo-Agyei, who disliked Lindsey because of her age. Lindsey insisted that Jenkins decided to fire her after "blindly relying" on biased information from Bamfo-Agyei.

The district court granted summary judgment in favor of Walgreens. In rejecting Lindsey's cat's paw theory, the court cited Jenkins' undisputed testimony that she independently reviewed the incident before firing Lindsey. Jenkins was not a cat's paw, the court reasoned, because she did not rely solely on information provided by Bamfo-Agyei.

On appeal Lindsey disputes that conclusion and insists that the record reveals that Jenkins "blindly relied" on

biased information from Bamfo-Agyei. But her argument is unavailing because she failed to show that the information Bamfo-Agyei gave to Jenkins was biased. Instead of highlighting evidence that Bamfo-Agyei concealed or pointing to falsehoods that she presented as facts, *see Brewer v. Bd. of Trs.*, 479 F.3d 908, 917 (7th Cir. 2007), Lindsey cites the inappropriate remarks about her age that she says Bamfo-Agyei made on other occasions. Showing that Bamfo-Agyei uttered offensive slurs, however, does not establish that she manipulated Jenkins' decision. *See Wallace v. SMC Pneumatics, Inc.*, 103 F.3d 1394, 1400 (7th Cir. 1997).

Even if Lindsey could show that Bamfo-Agyei provided Jenkins with biased information, Walgreens presented undisputed evidence that Jenkins did not rely solely on what she learned from Bamfo-Agyei. *See Martino v. MCI Commc'ns Servs., Inc.*, 574 F.3d 447, 452-53 (7th Cir. 2009). The parties do not disagree that Jenkins conducted an investigation before firing Lindsey; Lindsey, however, challenges the *thoroughness* of the investigation, arguing in particular that Jenkins should have solicited her side of the story. But the thoroughness of Jenkins' investigation is irrelevant. Because the record reveals that Jenkins did not rely solely on Bamfo-Agyei's allegations, Lindsey cannot make out her cat's paw theory. *See Staub v. Proctor Hosp.*, 560 F.3d 647, 659 (7th Cir. 2009), *cert. granted*, 130 S. Ct. 2089 (2010) (No. 09-400).

And even if Jenkins were a cat's paw, Lindsey could not prevail because the evidence established at most that her age was a *motivating* factor in Walgreens' decision to

fire her. To establish liability under the ADEA, however, Lindsey had to show that her age was the *determinative* factor. *See Gross v. FBL Fin. Servs., Inc.*, 129 S. Ct. 2343, 2352 (2009); *Senske v. Sybase, Inc.*, 588 F.3d 501, 508-09 (7th Cir. 2009). Yet substantial, undisputed evidence in the record supports Walgreens' assertion that it fired Lindsey not because of her age but because she violated company policy. She overrode the database's drug-interaction warning. Bamfo-Agyei reported the incident to Jenkins because she feared for the customer's well-being. And Jenkins had warned Lindsey of the harsh consequences she would face if she violated company policy again. So even if Bamfo-Agyei harbored some age-based animus, and even if that discriminatory motive could be imputed to Jenkins, Lindsey has not shown that Walgreens fired her *because of* her age.

AFFIRMED.