FILED
United States Court of Appeals
Tenth Circuit

June 2, 2011

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

PATRICIA F. SIMMONS,

Plaintiff–Appellant,

v.

SYKES ENTERPRISES,
INCORPORATED, a Florida
corporation,

Defendant–Appellee.

No. 09-1558

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 1:08-CV-00449-JLK)**

---

Elwyn F. Schaefer (Gary B. Witt with him on the briefs), of Elwyn F. Schaefer and Associates, P.C., Denver, Colorado, for Plaintiff–Appellant.

John W. Campbell of Constangy, Brooks & Smith, LLP, Tampa, Florida, for Defendant–Appellee.

---

Before **MURPHY**, **McKAY**, and **TYMKOVICH**, Circuit Judges.

---

**McKAY**, Circuit Judge.

---

Patricia Simmons appeals from the district court's grant of summary

judgment in favor of her former employer, Sykes Enterprises, on her claim of

discrimination in violation of the Age Discrimination in Employment Act of 1967

("ADEA"), 29 U.S.C. § 621 *et seq*. The district court concluded Ms. Simmons had failed to establish that Sykes' reason for terminating her employment was pretextual. For the following reasons, we AFFIRM.

## BACKGROUND

Ms. Simmons began working for Sykes in 1997, first as a phone technician then later as a technician/assistant within the Human Resources ("HR") Department at Sykes' Sterling, Colorado office. By all reports, Ms. Simmons was a good employee during the ten years she was employed.

Ms. Simmons alleges her work environment grew hostile in June 2007 upon the return of Persephone James as the Sterling office's site director. Shortly after returning to the Sterling office, Ms. James allegedly told Ms. Simmons in an "almost vicious" manner she thought Ms. Simmons had already retired. (Simmons Dep. 170:7-11, Aug. 7, 2008, Appellant's App. at 128.) Ms. James also allegedly told Ms. Simmons at an office party: "You better slow down because at your age you're going to have a heart attack if you keep this up." (*Id.* 173:7-9.) Ms. Simmons also alleges Amanda Owen, Sykes' Sterling HR supervisor, made hostile comments about her to other co-workers. Specifically, Ms. Owen allegedly asked another employee whether Ms. Simmons repeated herself and stated "now that Pat is getting older she seems to forget a lot and is always repeating herself." (Gaddis Aff. ¶ 2, Aug. 14, 2008, Appellant's App. at 321.) Ms. Simmons never complained to management about either Ms. James or

Ms. Owen.

In early August 2007, an aggrieved employee complained to Ms. Owen that somebody within the company had improperly disclosed the employee's confidential medical information. Ms. Owen notified Jeff Bieker, Sykes' regional HR Manager, and Mr. Bieker instructed Ms. Owen to begin interviewing those mentioned in the complaint. Shortly thereafter, Janice DiRose, Sykes' corporate employment counsel and senior director of HR compliance, was notified of the complaint. Ms. DiRose instructed Ms. James to interview and obtain written statements from those involved. Ms. James, Ms. Owen, and Mr. Bieker all participated in the investigation. They determined from initial interviews and statements that Ms. Simmons had disclosed the confidential information to another HR associate, Sharon Gaddis, who in turn disclosed it to others outside of their department.

On August 2, Ms. Gaddis answered questions and signed a statement, typed by Ms. James, implicating Ms. Simmons as the source of the confidential information. On August 7, Ms. Gaddis supplemented her statement with information suggesting the confidential information had also been disclosed in a manner independent from Ms. Simmons' conduct. Although Ms. Gaddis has since disavowed her statements, at no time during the investigation did she recant her allegations despite having the opportunity to do so.

Ms. James and Mr. Bieker twice met with Ms. Simmons to question her

about the disclosure. Prior to answering their questions, Ms. Simmons read and signed a Notice of Investigation ("NOI"). The NOI informed her she would not be retaliated against for participating in the investigation but she would be subject to discipline or termination for disclosing confidential information, providing false or misleading information, or sharing any information regarding the investigation. During both interviews, Ms. Simmons denied any wrongdoing.

After Ms. James, Ms. Owen, and Mr. Bieker completed their interviews, Ms. DiRose reviewed the collected statements and personally interviewed Ms. Gaddis and Ms. Simmons. Ms. Simmons again denied having disclosed the confidential information. However, Ms. DiRose believed that, over the course of the investigation, Ms. Simmons gave inconsistent answers regarding her knowledge of the confidential information and discussed other employees' confidential medical information. During a conference call between Ms. James, Ms. Owen, Mr. Bieker, and Ms. DiRose, Mses. James and Owen recommended Ms. Simmons be terminated.[1] Ms. DiRose then recommended to Jenna Nelson, Sykes' senior vice president of HR, that Ms. Simmons be terminated, and Ms. Nelson authorized the termination.

Sykes fired both Ms. Simmons, who was sixty-two, and Ms. Gaddis, who

---

[1] It is unclear whether Mr. Bieker recommended termination during the conference call. However, he did conclude that Ms. Simmons should be terminated and discussed his conclusion with Ms. James. (Bieker Dep. 40:19-24, Aug. 8, 2008, Appellant's App. at 225.)

was twenty-three. After her termination, Ms. Simmons filed a complaint with the Equal Employment Opportunity Commission. After receiving a Dismissal and Notice of Rights, she filed this lawsuit in district court. The court granted summary judgment in favor of Sykes, concluding Ms. Simmons did not establish any dispute of material fact that Sykes' stated reasons for her termination were pretext for age discrimination. This appeal followed.

**DISCUSSION**

We review the grant of summary judgment de novo, applying the same standards as the district court. *See Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1195 (10th Cir. 2008). We view the facts, and all reasonable inferences those facts support, in the light most favorable to the nonmoving party, here Ms. Simmons, *see id.*, but we will not as a general matter consider issues that were not raised below, *see United States v. Jarvis*, 499 F.3d 1196, 1201 (10th Cir. 2007) (citing *Singleton v. Wulff*, 428 U.S. 106, 120 (1976)). Because our review is de novo, we need not separately address arguments that the district court erred by viewing evidence in the light most favorable to Sykes and by treating disputed issues of fact as undisputed. *See Rivera v. City and Cnty. of Denver*, 365 F.3d 912, 920 10th Cir. 2004). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Under the ADEA, it is "unlawful for an employer . . . to fail or refuse to

hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a). "[T]he ordinary meaning of the ADEA's requirement that an employer took adverse action 'because of' age is that age was the 'reason' that the employer decided to act." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. ___, 129 S. Ct. 2343, 2350 (2009). In other words, we must determine whether age was a "but-for" cause, *id.*, or "the factor that made a difference," *Jones v. Okla. City Pub. Sch.*, 617 F.3d 1273, 1277 (10th Cir. 2010); c*f.* W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on Torts* § 41, at 265 (5th ed. 1984) ("An act or omission is not regarded as a cause of an event if the particular event would have occurred without it.").

Ms. Simmons has not challenged the district court's holding that there is no direct evidence of discrimination, so we evaluate her ADEA claim using the three-step framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). *See Jones*, 617 F.3d at 1278-79. Under this framework, the plaintiff must initially establish a prima facie case of discrimination. *McDonnell Douglas*, 411 U.S. at 802. If the plaintiff establishes a prima facie case, the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for its action. *Id.* at 802-03. Should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true

-6-

reasons, but were a pretext for discrimination. *Id.* at 804.

## Pretext

Our relevant inquiry for determining pretext is "whether the employer's stated reasons were held in good faith at the time of the discharge, even if they later prove to be untrue, or whether plaintiff can show that the employer's explanation was so weak, implausible, inconsistent or incoherent that a reasonable fact finder could conclude that it was not an honestly held belief but rather was subterfuge for discrimination." *Young v. Dillon Cos., Inc.*, 468 F.3d 1243, 1250 (10th Cir. 2006). In making this determination we "look at the facts as they appear to the person making the decision to terminate." *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1231 (10th Cir. 2000).

Any argument by Ms. Simmons for pretext based on whether she actually disclosed the confidential information fails to address our inquiry of whether Sykes honestly relied in good faith upon the reported inconsistencies both in Ms. Simmons' statements and between her statements and the statements of others. "Evidence that the employer should not have made the termination decision—for example, that the employer was mistaken or used poor business judgment—is not sufficient to show that the employer's explanation is unworthy of credibility." *Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1169-70 (10th Cir. 2007).

Turning then to the basis for Sykes' decision, it claims it relied on

perceived inconsistencies in Ms. Simmons' statements, including her initial statement that she was unsure if others knew the confidential information even though she later told the investigators other people were aware of the information and her claims that she did not know certain details of confidential information despite mentioning those details during the course of her interviews and statements. Sykes also claims to have relied on Ms. Simmons' voluntary disclosure of unrelated confidential medical information in a written statement submitted to the investigators as evidence that she could not be trusted with confidential information.

Sykes has consistently relied upon these concerns as its justification for believing Ms. Gaddis' statements over those of Ms. Simmons and concluding Ms. Simmons disclosed the confidential information. Here, "[o]ur role is . . . not to act as a 'super personnel department' that second guesses employers' business judgments." *Simms v. Oklahoma ex rel. Dep't of Mental Health and Substance Abuse Servs.*, 165 F.3d 1321, 1330 (10th Cir. 1999). As it appeared to Sykes, Ms. Simmons' statements contained illogical changes in degrees of knowledge and certainty. Furthermore, Ms. Simmons' position as an HR assistant carried with it a special duty to safeguard and maintain confidential employee information. Given the information she had before her, Ms. DiRose had discretion to err on the side of caution and conclude Ms. Simmons "could not be trusted to protect the confidentiality of private employee and Company information." (DiRose Decl.

-8-

¶20, Dec. 23, 2008, Appellant's App. at 240); c*f. Bauer v. Bailar*, 647 F.2d 1037, 1046 (10th Cir. 1981) (holding employer's subjective hiring criteria to be non-pretextual where the subjective factors considered were articulated and generally relevant to the job).  Sykes' desire for greater confidence in its HR staff is further evinced by its decision to also terminate Ms. Gaddis, a younger employee who allegedly violated similar rules of confidentiality and investigatory protocol and was fired at the same time as Ms. Simmons.[3]

## Subordinate Bias

Our inquiry is not limited, however, to evaluating whether Sykes' justification for terminating Ms. Simmons was, in the eyes of the final decision-makers, honestly held in good faith.  We must also address whether Mses. James and Owen harbored discriminatory animus toward Ms. Simmons and, through their biased influence on the final decision, caused Ms. Simmons' termination.

The Supreme Court recently affirmed the theory of subordinate bias—or "cat's paw"[4]—liability in *Staub v. Proctor Hospital*, 562 U.S. ___, 131 S. Ct.

---

[3] Ms. Simmons argues for the first time in her reply brief that Sykes authorized Ms. Gaddis to have access to the confidential information and thus it would be impossible for Ms. Simmons to disclose anything to Ms. Gaddis about which Ms. Gaddis did not already have the right to know.  This argument comes too late. "This court does not ordinarily review issues raised for the first time in a reply brief."  *Stump v. Gates*, 211 F.3d 527, 533 (10th Cir. 2000).

[4] The term "cat's paw" entered the employment discrimination lexicon in *Shager v. Upjohn Co.*, 913 F.2d 398, 405 (7th Cir. 1990).  For background on the term, see *EEOC v. BCI Coca-Cola Bottling Co. of Los Angeles*, 450 F.3d 476, 484

(continued...)

1186 (Mar. 1, 2011), holding that, in a discrimination suit arising under the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), an employer is liable if: (1) a supervisor performs an act motivated by antimilitary animus that is intended to cause an adverse employment action, and (2) that act is a proximate cause of the ultimate employment action.

We must first consider whether the holding in *Staub* applies to discrimination cases brought under the ADEA. Unlike Title VII and the USERRA, "the ADEA's text does not provide that a plaintiff may establish discrimination by showing that age was simply a motivating factor," the operative phrase relied upon in *Staub*. *Gross*, 129 S. Ct. at 2349. A plaintiff alleging age discrimination must instead prove age was a "but for" cause of her termination. *See id.* Despite this distinction, the underlying principles of agency upon which subordinate bias theories are based apply equally to all types of employment discrimination discussed here. Indeed, this circuit has applied the subordinate bias doctrine to cases arising under both Title VII, *see, e.g.*, *EEOC v. BCI Coca-Cola Bottling Co. of Los Angeles*, 450 F.3d 476, 485 (10th Cir. 2006), and the ADEA, *see Schulte v. Potter*, 218 F. App'x 703, 719 (10th Cir. 2007).

Although we apply the subordinate bias doctrine to age discrimination cases, the ADEA requires more than what must ordinarily be proven under an

[4](...continued)
(10th Cir. 2006).

-10-

analogous Title VII or USERRA action. If we were to apply *Staub* directly to an age-discrimination case, the plaintiff would then only need to prove her supervisor's animus was somehow related to the termination and not that the animus was necessary to bring about the termination. *Compare Staub*, 131 S. Ct. at 1192 ("Proximate cause requires only some direct relation between the injury asserted and the injurious conduct alleged, and excludes only those links that are too remote, purely contingent, or indirect.") (internal quotation marks and brackets omitted), *with Gross*, 129 S. Ct. at 2349-50. In age-discrimination cases, however, the relationship between a subordinate's animus and the ultimate employment decision must be more closely linked. C*f. Lindsey v. Walgreen Co.*, 615 F.3d 873, 876 (7th Cir. 2010) ("[E]ven if Jenkins were a cat's paw, Lindsey could not prevail because the evidence established at most that her age was a motivating factor in Walgreens' decision to fire her. To establish liability under the ADEA, however, Lindsey had to show that her age was the *determinative* factor."). Thus, even after *Staub*, an ADEA plaintiff seeking to hold an employer liable through the discriminatory conduct of its subordinate must show the subordinate's animus was a "but-for" cause of the adverse employment action, i.e. it was the factor that made a difference. *See Jones*, 617 F.3d at 1277.

To illustrate, a supervisor's animus might be a "but-for" cause of termination where, for example, the biased supervisor falsely reports the employee violated the company's policies, which in turn leads to an investigation

-11-

supported by the same supervisor and eventual termination. Or the biased supervisor may write a series of unfavorable periodic reviews which, when brought to the attention of the final decision-maker, serve as the basis for disciplinary action against the employee. But where a violation of company policy was reported through channels independent from the biased supervisor, or the undisputed evidence in the record supports the employer's assertion that it fired the employee for its own unbiased reasons that were sufficient in themselves to justify termination, the plaintiff's age may very well have been in play—and could even bear some direct relationship to the termination if, for instance, the biased supervisor participated in the investigation or recommended termination—but age was not a determinative cause of the employer's final decision.

Here, assuming without deciding that Mses. James and Owen were motivated by ageist animus and intended to have Ms. Simmons' employment terminated, we must still determine whether Ms. Simmons' age was a "but-for" cause of her termination by asking whether Sykes would have fired Ms. Simmons but for Mses. James and Owen's alleged bias. It is undisputed that neither Ms. James nor Ms. Owen caused the investigation to begin. Rather, Mr. Bieker and Ms. DiRose acted in response to a complaint initiated by an aggrieved, unbiased employee. Mr. Bieker ordered the first interview, and Ms. DiRose ordered the full investigation. Ms. DiRose received input from individuals other than Mses. James

and Owen and personally interviewed both Ms. Simmons and Ms. Gaddis before deciding to recommend termination to Ms. Nelson. Mr. Bieker, against whom there is no allegation of discriminatory bias, similarly concluded Ms. Simmons should be terminated. Sykes also terminated Ms. Gaddis' employment for similar violations of company policy despite an absence of discriminatory animus.

These undisputed facts permit only the inference that, absent the alleged discriminatory bias, Sykes would still have fired Ms. Simmons because, from Sykes' perspective, she violated company policy and could not be trusted with confidential information. Thus, a reasonable jury could not find Ms. Simmons was terminated because of her age.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's order granting summary judgment.