FILED
United States Court of Appeals
Tenth Circuit

January 14, 2013

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

PAUL S. RANGEL,

     Plaintiff-Appellant,

v.

SANOFI AVENTIS U.S., LLC; SANOFI
AVENTIS U.S., INC.,

     Defendants-Appellees.

No. 12-3085
(D.C. No. 6:10-CV-01359-CM-KGG)
(D. Kan.)

**ORDER AND JUDGMENT**[*]

Before **GORSUCH**, **ANDERSON**, and **EBEL**, Circuit Judges.

Paul Rangel appeals from the district court's order granting summary judgment

in favor of his former employer on his claims for unlawful age discrimination in

violation of the Age Discrimination and Employment Act (ADEA) and ADEA

retaliation.  We have jurisdiction under 28 U.S.C. § 1291 and affirm.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of this
appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I.  Background

Mr. Rangel was a sales professional with pharmaceutical company sanofi-aventis U.S. LLC and sanofi-aventis U.S. Inc. (S-A) and its predecessors from 1985 until he was terminated as part of a reduction in force (RIF) on December 30, 2008.  It is undisputed that Mr. Rangel did not have any negative performance reviews until after S-A issued new "Sales Professionals Procedurals and Expectations" guidelines in 2006.  In these guidelines, S-A detailed its expectations for all its sales professionals nationwide, including a minimum number of expected face-to-face sales calls with physicians; requisite pre-call planning and post-call reporting; use of specific product and promotional material; and on-going sales communications.  After these guidelines were issued, two different S-A supervisors, Ms. Soupir and Mr. Ford, documented—in over twenty memos and performance reviews—deficiencies in Mr. Rangel's ability to follow the guidelines.

Ms. Soupir became Mr. Rangel's supervisor in September 2006.  She sent him a memo in January 2007, critiquing his performance in certain "core competencies" outlined in the guidelines, including inconsistent use of sales materials, visual aids, and clinical product information; his product knowledge and use of clinical studies; his pre- and post- call planning; and his sales territory management.  She sent him a similar memo six months later stating that he was still deficient in these core competencies; that he was "not implementing the feedback that [had] been provided [to him] over the past nine months," and that his lack of urgency in meeting these

performance expectations was "unacceptable moving forward." Aplt. App., Vol. 1, at 143-44. Then, in October 2007, Ms. Soupir gave Mr. Rangel a detailed "Coaching Letter," identifying specific actions he needed to take to demonstrate consistent and sustained improvement in the core competencies. Ms. Soupir accompanied Mr. Rangel on his sales calls in November 2007 and January 2008, and sent him memos listing ways in which he could improve. In a February 2008 memo, Ms. Soupir told Mr. Rangel his improvements were inconsistent and she listed the improvements he needed to make in his selling skills, product knowledge, and territory management.

Mr. Rangel's overall performance was rated as "Below" at his year-end performance review for 2007. The review summary stated that Mr. Rangel had not demonstrated consistent performance in the areas of selling skills, product knowledge, and territory management. *Id.* at 198. Mr. Rangel was placed on a final written plan (FWP) in May 2008, for "continuous and significant gaps between the minimum expectations of the job and [his] performance." *Id.* at 201. The FWP meant Mr. Rangel would automatically receive a "below expectations" performance rating for 2008.

Mr. Ford became Mr. Rangel's supervisor in June 2008. After going on sales calls with Mr. Rangel, Mr. Ford sent him a memo noting numerous performance problems, including lack of product and clinical data knowledge and inconsistent use of sales data and resources. Mr. Ford identified continuing deficiencies in an

August 2008 memo, telling Mr. Rangel that "immediate and marked improvement must be made." *Id*. at 233. Mr. Ford noted marked improvement with Mr. Rangel's performance a month later, but also identified issues that needed improvement. At his October 2008 mid-year review, Mr. Rangel's overall performance was rated below expectations.

In each of these and the other memos, Ms. Soupir and Mr. Ford gave specific examples of Mr. Rangel's stated deficiencies. These included such items as giving incorrect product information; lack of effective listening with physicians; repeatedly failing to use S-A's selling model and materials; not following the pre-call planning process; failing to do multi-product sales calls; and ongoing planning problems related to sales territory management. These memos, most of which were reviewed by more senior supervisors, also detailed the changes Mr. Rangel needed to make in order to meet S-A's expectations and stressed that it was critical he meet these expectations.

Mr. Rangel filed an age discrimination complaint with the Kansas Human Rights Commission (KHRC) on September 16, 2008. On December 4, 2008, S-A announced a corporate realignment that included a nationwide RIF. It terminated all sales professionals who had either a "below" or "less than" expected performance rating in two of the last three years, or who had a "below" or "less than" rating in 2007 and were trending towards those ratings in 2008. *Id*. at 99. Three days before the public announcement, S-A notified Mr. Rangel he would be terminated in the RIF

- 4 -

because he had a "below" rating in 2007 and, as a result of the FWP, would be rated "below" for 2008 as well.

Mr. Rangel then filed his ADEA complaint. He alleged he was over 40 years old, his performance was satisfactory because he had some of the highest sales results in his district both before and after Ms. Soupir began to supervise him, and that S-A singled him out for unwarranted criticism because of his age and later, in retaliation for the age discrimination complaint he filed with KHRC.

S-A moved for summary judgment arguing Mr. Rangel's ADEA claim failed because similarly-situated younger employees were not treated differently than he was treated, and he had not presented any evidence that his inclusion in the RIF was pretext for age discrimination or ADEA retaliation. S-A argued Mr. Rangel's retaliation claim failed because all of the performance reviews that caused Mr. Rangel to fall within the uniform RIF criteria were issued well before he filed his age complaint with KHRC. The district court granted S-A's motion, ruling that Mr. Rangel failed to establish a prima facie case of age discrimination or retaliation, and even if he had, that he failed to produce any evidence that S-A's asserted reason for terminating him was a pretext for discrimination or retaliation.

## II.  Discussion

"We review summary judgment decisions de novo, applying the same legal standard as the district court." *Sanders v. Sw. Bell Tel., L.P.*, 544 F.3d 1101, 1104 (10th Cir. 2008). Summary judgment is appropriate "if the movant shows that there

is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "When applying this standard, we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Sanders*, 544 F.3d at 1105 (internal quotation marks omitted).

Because Mr. Rangel relies solely on circumstantial evidence to prove discrimination and retaliation, we analyze his claims under the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). *Simmons v. Sykes Enters., Inc.*, 647 F.3d 943, 947 (10th Cir. 2011). "Under this framework, the plaintiff must initially establish a prima facie case of discrimination." *Id*. "If the plaintiff establishes a prima facie case, the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for its action." *Id*. "Should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id*.

## A. Age Discrimination Claim

Mr. Rangel contends the district court erred in ruling that he did not establish a prima facie claim of age discrimination. To demonstrate a prima facie case of age discrimination in the context of a RIF, Mr. Rangel must show that he (1) is within a protected age group; (2) was doing satisfactory work; (3) was discharged despite the adequacy of his work; and (4) has some evidence the employer intended to

discriminate against him in reaching its RIF decision. *Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1195 (10th Cir. 2008). The fourth factor may be satisfied by circumstantial evidence that, during the RIF, the employer discharged the plaintiff but retained or placed a younger employee in a similar position. *Id.*

The district court ruled that Mr. Rangel did not present any evidence that would establish the fourth element. Mr. Rangel stated in his brief that his duties were assumed by a younger worker, but he provided no evidentiary support for this statement. The court noted that S-A presented statistical evidence that younger workers were not treated more favorably than older workers in the RIF, and that Mr. Rangel did not rebut this evidence or otherwise present evidence that younger, similarly-situated employees fared better in the RIF. S-A's statistical evidence, described in detail in the district court's order, showed that in Mr. Rangel's work group, the ratio of employees over age 40 to employees under age 40 remained unchanged after the RIF.

Mr. Rangel first argues the district court erred in applying the elements of a prima facie case used in RIF cases. He asserts he was not part of the RIF because he was told of his termination on December 1, three days before the RIF was publicly announced. But this is mere conjecture. S-A presented undisputed evidence from its Senior Director of Human Resources that Mr. Rangel was terminated as part of S-A's nationwide RIF; that all affected employees were given 30-days' notice of their

termination, and that the effective date of the RIF was December 30. There is no evidentiary support for Mr. Rangel's assertion.

In any event, "the appropriate formulation of the prima facie case is flexible, looking to those logically salient circumstances of each case that may raise the requisite inference of discrimination." *Medlock v. United Parcel Serv., Inc.*, 608 F.3d 1185, 1191 n.5 (10th Cir. 2010). Outside the context of a RIF, a prima facie case of discrimination under the ADEA requires a plaintiff to prove that: "(1) he is within the protected age group; (2) he was doing satisfactory work; (3) he was discharged; and (4) his position was filled by a younger person." *Rivera v. City & Cnty. of Denver*, 365 F.3d 912, 920 (10th Cir. 2004) (internal quotation marks omitted). As the district court correctly ruled, Mr. Rangel did not provide *any* evidence to support his assertion that his position or duties were filled by a younger person.

Mr. Rangel also challenges the relevancy of S-A's statistics, which showed that the ratio of older to younger employees remained unchanged after the RIF, because they do not indicate the relative sales rankings of those selected for the RIF and only surveyed the business unit he was in at the time of his termination. But it is undisputed that the RIF criteria were based on performance evaluations, not sales results. And more to the point, Mr. Rangel did not present any other statistical evidence rebutting S-A's, or otherwise meet *his* burden to present evidence that he was replaced by a younger person, that younger employees fared better in the RIF, or

- 8 -

that S-A intended to discriminate against him on the basis of age in reaching its RIF decision. We conclude the district court correctly ruled that Mr. Rangel did not put forth evidence establishing a prima facie age discrimination claim.

## B. ADEA Retaliation

Next, Mr. Rangel contends the district court erred in ruling he did not establish a prima facie claim of ADEA retaliation. To establish a prima facie case of ADEA retaliation, Mr. Rangel must show that (1) he "engaged in protected opposition to discrimination, (2) a reasonable employee would have considered the challenged employment action materially adverse, and (3) a causal connection existed between the protected activity and the materially adverse action." *Hinds*, 523 F.3d at 1202. The district court ruled that Mr. Rangel failed to show a prima facie case of ADEA retaliation because all of the performance factors and negative evaluations that led to his inclusion in the S-A's RIF criteria were in place many months before he filed his discrimination complaint with the KHRC. Thus it ruled there was no causal connection between any ADEA protected activity and Mr. Rangel's inclusion in the RIF.

On appeal, Mr. Rangel argues his December 2008 termination occurred three months after his September 2008 KHRC age-discrimination complaint. But he did not dispute S-A's evidence that its RIF criteria were uniform and that his inclusion therein was based on performance events and reviews that occurred many months before he filed his KHRC complaint: the below-expectations performance rating he

- 9 -

received in his 2007 year-end review, and the May 2008 issuance of a FWP, which meant he would automatically receive a below-expectation year-end review for 2008.

Instead, he points to evidence that he complained internally to S-A supervisors about the negative performance memos and reviews issued by Ms. Soupir, and he argues these complaints constituted protected activity that preceded his KHRC complaint. But his evidence shows only that he complained that Ms. Soupir's critiques were unfair and harsh. He presented no evidence that he ever asserted a belief prior to his KHRC complaint that he was being discriminated against in any way because of his age or other protected classification.

Although "protected activity" can include voicing informal complaints to supervisors, *see Hertz v. Luzenac Am., Inc.*, 370 F.3d 1014, 1015 (10th Cir. 2004), "to qualify as protected opposition, the employee must convey to the employer his or her concern that the employer has engaged in [an unlawful] practice." *Hinds*, 523 F.3d at 1203. "A vague reference to discrimination and harassment without any indication that this misconduct was motivated by age does not constitute protected activity and will not support a retaliation claim." *Id*. at n.13 (brackets and internal quotation marks omitted). An employer cannot engage in unlawful retaliation if it does not know that the employee at least in part is engaging in protected activity. *See Petersen v. Utah Dept. of Corr.*, 301 F.3d 1182, 1188 (10th Cir. 2002). Thus, there is no evidence Mr. Rangel engaged in protected activity prior to September 2008, many months after his negative performance review and FWP. The district court correctly

ruled that Mr. Rangel failed to present evidence establishing a prima facie ADEA retaliation claim.

## C. Pretext

Most of Mr. Rangel's brief is devoted to his arguments that S-A's proffered reason for terminating him is pretext because he had excellent sales results throughout his career, including 2007 and 2008. The district court ruled that this evidence did not controvert S-A's evidence that he was failing to meet the expectations set out in its 2006 guidelines, and that he did not offer any evidence of impermissible motive in the RIF. *See Sanders*, 544 F.3d at 1106-07 (holding that, in the context of a RIF, proof of pretext includes evidence that the plaintiff's termination was inconsistent with the RIF criteria articulated by the employer; a claimed business judgment "so idiosyncratic or questionable that a factfinder could reasonably find that it is pretext for illegal discrimination"; the employer's inconsistent application of the RIF criteria; or other procedural irregularities in the RIF process). Because we affirm the district court's rulings that Mr. Rangel did not demonstrate either a prima facie age discrimination or retaliation claim, we need not address his arguments concerning pretext. We note only that we concur in the

district court's ruling that Mr. Rangel failed to produce evidence showing that S-A's proffered reason for terminating his employment in the RIF was pretextual.

The judgment of the district court is affirmed.

Entered for the Court


David M. Ebel
Circuit Judge