**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 29, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

YOLANDA HANSON,

        Plaintiff-Appellant,

v.

COLORADO JUDICIAL
DEPARTMENT, 4th Judicial District
Probation Department,

        Defendant-Appellee.

No. 13-1166
(D.C. No. 1:11-CV-02515-RPM)
(D. of Colo.)

**ORDER AND JUDGMENT**[*]

Before **LUCERO**, **SEYMOUR**, and **TYMKOVICH**, Circuit Judges.[**]

This case arises out of claims made by appellant Yolanda Hanson against

her former employer, the Colorado Judicial Department, for retaliatory firing

under Title VII, 42 U.S.C. § 2000e-3(a). The district court granted summary

judgment in favor of the Department because an independent investigation

---

[*] This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

[**] After examining the briefs and the appellate record, this three-judge
panel has determined unanimously that oral argument would not be of material
assistance in the determination of this appeal. *See* Fed. R. App. P. 34(a); 10th
Cir. R. 34.1(G). The cause is therefore ordered submitted without oral argument.

revealed that Hanson had misused Family Medical Leave Act (FMLA) time to train for a new job in California. Exercising jurisdiction under 28 U.S.C § 1291, we AFFIRM.

## I. Background

Hanson was a support clerk in the probation department of Colorado's Fourth Judicial District. Her immediate supervisor was Donette Thayer.

In April 2008, Hanson complained to Thayer about Thayer's favoritism among support clerks. After her complaint, Hanson contends that Thayer harassed her by, among other things, making comments about Hanson's job status and seeking access to Hanson's work computer.

In response, Hanson sent an email to Jack Ruszczyk, the head of the probation department, and others in upper management, complaining that Thayer was harassing her. Hanson met with Ruszczyk, explained the problems she was having with Thayer, and more generally condemned department practices that she claimed treated African-American employees differently than white employees when they raised grievances or elevated issues to Ruszczyk.

A few days after the meeting, on October 1, 2008, Hanson emailed a complaint to Human Resources and the Chief Judge of the District. In this email, she explained that she felt her job was in jeopardy due to her relationship with Thayer. She further expressed concern that she was being treated differently, particularly by Thayer and Ruszczyk, on account of her race.

In response to this complaint, the Department assigned Janet Bravo, a senior HR analyst, to investigate. Over the course of her investigation, she interviewed seven witnesses and ultimately concluded that Thayer contributed to the interpersonal problems among the clerks, but that Hanson's claims of discrimination on the basis of race were unsubstantiated.

In December, Sean Wright, an IT volunteer at the Department, filed a complaint with allegations of sexual harassment against Hanson.[1] To address this allegation, the Department assigned its two most senior HR personnel, Mindy Masias and Eric Brown, to investigate. During this investigation, Michelle McCune, a co-worker of Hanson, sent an email to Brown, reporting that Hanson had fraudulently used FMLA time to attend training in California to obtain secondary employment with an airline. Masias and Brown verified the fraudulent use of FMLA through an employment check with ValuJet Airlines, App. 110, and labeled this violation as "Ancillary Concern #3" in the report they prepared documenting their investigation. Hanson originally indicated that she was using the FMLA time to care for her sick mother, but it is uncontroverted that she did in fact use the time to travel to California to participate in airline training.[2]

_____

[1] Incidentally, Wright is also Thayer's son.

[2] In several places in her brief, Hanson attempts to shrug off the FMLA violation as a *de minimis* infraction that did not actually defraud the Department. This is beside the point. Neither Department rules nor the Colorado Judicial Branch Code of Conduct require an act of fraud for termination. And Hanson

(continued...)

-3-

Although the report found no basis for Wright's sexual harassment claims, it did uncover two additional issues related to Hanson. First, it found that Hanson, notwithstanding specific instructions to the contrary, had interfered with the investigation by attempting to garner details from McCune about the interviews. Second, it uncovered emails in her probation department inbox that were lewd and inappropriate for the workplace.

Brown and Masias recommended a pre-disciplinary hearing regarding Hanson's fraudulent use of the FMLA time, the emails, and the investigation tampering. Ruszczyk scheduled the hearing for January 30, 2009. Ruszczyk typically handled pre-disciplinary hearings; however, because Hanson identified Ruszczyk in her October 2008 complaint, he elevated the matter to the Chief Judge.

During the hearing, Hanson admitted that she used the FMLA time to attend training in California. Consequently, on February 9, 2009, the Chief Judge terminated Hanson. In his termination letter, he referenced the fraudulent use of FMLA, the inappropriate email, and the interference with the investigation as grounds for termination. All three of the infractions violated Department personnel rules and/or the Judicial Branch Code of Conduct. In his affidavit in support of the Department's motion for summary judgment, the Chief Judge

---

[2](...continued)
clearly took advantage of benefits programs to which she was not entitled, which imposed residual, clear-cut costs on the Department.

clarified that "[m]y decision to terminate Ms. Hanson's employment was based on the fraudulent use of FML[A]. Although I also considered the other allegations against her involving the breach of confidentiality and inappropriate use of e-mail, the seriousness of the FML[A] violation alone was sufficient to warrant termination of her employment." App. 58.

After Hanson was terminated, she brought this lawsuit. The district court granted summary judgment in favor of the Department on all claims, finding that Hanson failed to provide sufficient evidence that the reasons for her firing were pretextual. On appeal, Hanson "only [brings] a claim of unlawful retaliation" premised on her allegations concerning racial discrimination. Aplt. Reply at 15; *Doebele v. Sprint/United Mgmt. Co.*, 342 F.3d 1117, 1140 (10th Cir. 2003) (finding that matters not raised on appeal are waived).[3]

## II.  Analysis

We review the "district court's grant of summary judgment de novo, applying the same legal standard used by the district court." *Kimzey v. Flamingo Seismic Solutions, Inc.*, 696 F.3d 1045, 1048 (10th Cir. 2012) (internal quotations marks omitted). "Because our review is de novo, we need not separately address arguments that the district court erred by viewing evidence in the light most

---

[3] To the extent that Hanson's Title VII race discrimination claim has not been waived on appeal, it fails to survive summary judgment because, as with her retaliation claim, she cannot prove pretext. *See infra* Part II.B.

favorable to [the prevailing party] and by treating disputed issues of fact as undisputed." *Simmons v. Sykes Enters., Inc.*, 647 F.3d 943, 947 (10th Cir. 2011). In addition, we can affirm on any grounds supported by the record. *Proctor v. United Parcel Service*, 502 F.3d 1200, 1206 (10th Cir. 2007).

Under Title VII's antiretaliation provision, employers are prohibited from discriminating against employees for opposing practices or conduct made unlawful by Title VII. *See Fye v. Okla. Corp. Comm'n*, 516 F.3d 1217, 1224–25 (10th Cir. 2008). In granting summary judgment for the Department, the district court evaluated Hanson's claim under the familiar burden-shifting test from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under *McDonnell Douglas*, the plaintiff must first articulate a *prima facie* case of unlawful retaliation. *See Crowe v. ADT Sec. Servs., Inc.,* 649 F.3d 1189, 1195 (10th Cir. 2011). A *prima facie* claim requires the plaintiff to show "(1) that [s]he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action." *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1202 (10th Cir. 2006).

If the plaintiff meets these requirements, then the employer must offer a legitimate, nondiscriminatory reason for the adverse employment action. *Crowe*, 649 F.3d at 1195. At that point, the plaintiff must show that the

nondiscriminatory reason is pretextual. *Id.* A fact question as to pretext can be established by showing "weaknesses, implausibilities, inconsistencies, incoherences, or contradictions" arising from the employer's proffered explanations for termination. *Lobato v. N.M. Env't Dep't*, 733 F.3d 1283, 1289 (10th Cir. 2013) (internal citations and quotation marks omitted).

The district court disposed of Hanson's claim on the third and final step, finding the Department's reasons were not subterfuge for discrimination. We agree with this conclusion, and also conclude Hanson cannot meet her antecedent burden of sufficiently alleging a material fact dispute regarding her *prima facie* case for retaliation.

### A. Prima Facie *Case*

The Department concedes that Hanson has sufficiently established the first two elements of her *prima facie* case—protected opposition and adverse action. Accordingly, the only dispute exists with respect to causation.

After carefully reviewing the record, we conclude that Hanson has not established causation. She fails to show (1) temporal proximity between the protected activity and the adverse employment action; and (2) that the retaliatory animus of her supervisors proximately caused her ultimate firing.

### 1. Temporal Proximity

Hanson "may establish the causal connection [necessary under Title VII] by proffering 'evidence of circumstances that justify an inference of retaliatory

-7-

motive, such as protected conduct closely followed by adverse action.'" *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1239–40 (10th Cir. 2004) (quoting *Bullington v. United Air Lines, Inc.*, 186 F.3d 1301, 1320 (10th Cir. 1999)). While the consideration of temporal proximity is a fact-specific inquiry, *Trujillo v. PacifiCorp*, 524 F.3d 1149, 1157 (10th Cir. 2008), this court has held that "a three-month period [between the protected activity and the adverse action], standing alone, is insufficient" to show causation, *Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1231 (10th Cir. 2004). Where the plaintiff cannot demonstrate temporal proximity, she "must offer additional evidence to establish causation." *Antonio v. Sygma Network, Inc.*, 458 F.3d 1177, 1182 (10th Cir. 2006). Moreover, "where intervening events between the employee's protected conduct and the challenged employment action provide a legitimate basis for the employer's action," even a short period of time between the two will not give rise to an inference of retaliation. *Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 1001–02 (10th Cir. 2011).

Over four months passed between Hanson's initial complaint on October 1, 2008 and her termination on February 9, 2009. This four-month period is too protracted to permit an inference of retaliation, without more. In addition, all of the supplemental evidence on the record belies Hanson claims that the Department had retaliatory motives for her firing. Indeed, during these four months, the Department commissioned two separate HR investigations dedicated

-8-

to evaluating all of the allegations made by and directed at Hanson. Furthermore, the discovery of the fraudulent use of FMLA in clear violation of the Department's Code of Conduct independently constitutes a legitimate basis for Hanson's termination. This time gap, as well as the factual circumstances that occurred within it, underscore Hanson's inability to establish the requisite causation for her *prima facie* Title VII retaliation cause of action.

### 2. Retaliatory Animus

Even assuming that the four-month gap between protected activity and adverse action does not extinguish her *prima facie* claim, Hanson has failed to establish that the retaliatory animus of Thayer or Ruszczyk was the proximate cause of the Chief Judge's decision to terminate. Hanson seeks to connect Thayer and Ruszczyk's hostility toward her to the firing in an effort to invoke the "cat's paw," or subordinate bias, theory of liability. *Staub v. Proctor Hosp.*, 131 S. Ct. 1186 (2011).[4] *Staub* provides that an employer can be liable under Title VII if (1) a biased supervisor performs a deliberate act of retaliatory animus that is intended to cause an adverse employment action, and (2) that act proximately causes an adverse employment action *even when the ultimate choice to carry out that action is made by an impartial decision maker*. *Id.* at 1191–93; *see also EEOC v. BCI Coca-Cola Bottling Co. of L.A.*, 450 F.3d 476, 484–85 (10th Cir. 2006).

---

[4] Hanson relies on the cat's paw theory because there is no direct evidence that the Chief Judge was personally biased in any way; only that his decision was corrupted by the alleged prejudice of Thayer and Ruszczyk.

We applied *Staub* in a recent decision, *Lobato v. New Mexico Environment Department*, 733 F.3d 1283 (10th Cir. 2013). In that case, an environmental specialist for a state government agency filed a Title VII complaint, alleging that the unlawful racial animus of his supervisors influenced the agency's ultimate decision to terminate him. The record illustrated, however, that the employer had conducted several independent investigations, uninfluenced by the allegedly inimical supervisors, regarding the misrepresentations and misconduct that resulted in his firing. In those circumstances, we explained, where an independent decision maker "verifies the facts and does not rely on the biased source," the plaintiff cannot use subordinate liability to establish causation. *Id.* at 1294. Simply put, where a nonpartisan evaluation cleanses the causal chain of any alleged bias, "there is no subordinate bias liability." *Id.*

The alleged retaliatory bias of Thayer and Ruszczyk did not influence the Chief Judge's decision. He relied on the independent record created by the investigation conducted by Masias and Brown and did not consult information provided by either Thayer or Ruszczyk. Moreover, he considered the direct testimony of Hanson during her pre-disciplinary hearing, where she confessed she improperly used the FMLA time to travel to California—this fact alone would be a sufficient, independent ground for termination. The record reflects that any hostility harbored by Thayer and Ruszczyk toward Hanson was conclusively filtered out through the layers of independent consideration that resulted in

-10-

Hanson's firing. At bottom, Hanson's theory of subordinate bias liability fails because there is no dispute that the Chief Judge's decision was insulated from any facts provided by Thayer or Ruszczyk.[5]

### B. Pretext

Even if Hanson's Title VII claim could establish a *prima facie* case, the Department's proffered reason for her termination was not pretextual. As outlined above, the Chief Judge's articulated justification for Hanson's firing focused primarily on her undisputed fraudulent use of FMLA leave. This rationale is sufficient to meet the Department's burden under step two of *McDonnell Douglas* "to 'explain its actions against the plaintiff in terms that are not facially prohibited by Title VII.'" *Jones v. Barnhart*, 349 F.3d 1260, 1266 (10th Cir. 2003) (quoting *EEOC v. Flasher Co.*, 986 F.2d 1312, 1317 (10th Cir. 1992)).

Thus, the burden transfers back to Hanson to show pretext. "Pretext can be shown by such weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reasons for its action that a

---

[5] To overcome the deficiencies in her *prima facie* case, Hanson fashions a factual dispute as to whether Thayer knew of, or perhaps even authorized, Hanson's use of the FMLA time to train with the airline. Hanson alleges that Thayer encouraged her to use the FMLA time for the training in California to avoid the burden of altering the original designation to comply with Department policy. Even if true, however, this alleged fact question is immaterial because, as the district court held, Thayer's knowledge would not absolve Hanson for her violation of the FMLA leave, which provided nondiscriminatory grounds for her termination.

-11-

reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997) (internal quotation marks omitted).

Hanson has not raised a material issue of fact as to whether the Chief Judge's ultimate termination decision was simply pretext to disguise retaliatory animus. Indeed, Hanson's arguments for pretext are indistinguishable from her arguments supporting her theory of subordinate liability and they must be dismissed for the same reason. Any inference of discrimination collapses under the undisputed facts that dissociate the Chief Judge's decision from any alleged animus. On these facts, no rational factfinder could find pretext.

## III.  Conclusion

Finding that Hanson has failed to allege a material fact dispute regarding whether the Department fired her in retaliation for a protected activity, we AFFIRM the district court's grant of summary judgment in favor of the Department.

ENTERED FOR THE COURT,

Timothy M. Tymkovich
Circuit Judge