**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 3, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

ERNEST MCDONALD,

    Plaintiff-Appellant,

v.

THE BOEING COMPANY,

    Defendant-Appellee.

No. 14-1288

(D.C. No. 1:13-CV-01703-RBJ)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **BALDOCK**, and **PHILLIPS**, Circuit Judges.

Plaintiff Ernest McDonald sued his former employer, The Boeing Company, alleging he was unlawfully terminated because of his race in violation of Colorado and federal law. The district court granted summary judgment to Defendant, and Plaintiff appealed. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

**I.**

Plaintiff McDonald, an African-American military veteran, worked for

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a)(2) and 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. Furthermore, this order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Defendant Boeing from 2007 to 2012. Specifically, Plaintiff worked on several classified programs Defendant ran jointly with the United States Air Force. Beginning in 2008, funding for these programs decreased continuously, requiring layoffs of civilian employees. This funding was controlled entirely by the federal government, pursuant to Defendant's contract with the U.S. Air Force.

When he started in June 2007, Plaintiff worked as a *Level 3 Mission Operations Specialist* (hereinafter "L3 Operator") at Buckley Air Force Base in Aurora, Colorado. The next year, after receiving a pay increase, he and several other operators were notified they would be laid off soon. With Defendant's assistance, however, Plaintiff was able to obtain the position of *Level 4 Systems Engineer Support Analyst* in a different joint program in Colorado Springs. This position paid more than his old position, and Plaintiff began working there in August 2008. Soon after he started, though, Plaintiff was again notified he would be laid off soon because of more budget cuts. In January 2009, Defendant placed Plaintiff on "overhead," meaning Defendant returned Plaintiff to Aurora while he sought other internal opportunities. Defendant also increased Plaintiff's salary. After placing Plaintiff in several temporary positions, in June 2009 Defendant re-hired Plaintiff back to his old L3 Operator job, while allowing him to retain his higher salary.

In mid-2012, because of continued budgetary decreases, Defendant conducted another "Reduction in Force" (RIF) in order to lay off four of its eight remaining L3 Operators. To determine which four L3 Operators to lay off and which four to

retain, Defendant utilized a ranking system crafted pursuant to the company's written guidelines. This system based sixty percent of each L3 Operator's ranking on general and technical competencies and forty percent on different aspects of the previous year's performance review. Utilizing a pre-existing list, Boeing managers Timothy Ferreira and James Barduniotis determined ten competencies that would be considered for the 2012 RIF: adaptability, collaboration, communication, continuous learning, crew resource management, data configuration management, decision making, initiating action, operations and maintenance support, and troubleshooting.

Next, Ferreira—who supervised all eight L3 Operators—analyzed and calculated ratings for the eight employees. Ferreira gave each employee a numerical score for each competency: (1) Entry Level, (2) Basic, (3) Working Level, (4) Advanced, and (5) Expert. Ferreira then entered these scores into a computer program. This program, utilizing both the competency assessments and performance review scores from the previous year, formulated a ranking. Afterward, Ferreira, Barduniotis, and Kathleen Benavides, a Human Resources representative, reviewed the ranking and decided against any further changes.

Plaintiff ranked sixth out of the eight L3 Operators. An employee named James Pepe ranked first. Around June 21, 2012, Plaintiff received notice that he was again facing termination in 60 days. After Defendant (and particularly, Barduniotis) unsuccessfully assisted Plaintiff with a countrywide search for another Boeing position, Plaintiff was laid off on August 24. The two L3 Operators ranked below

3

Plaintiff, both Caucasian, were also terminated.

Two days prior to his termination, Plaintiff complained to Defendant—for the first time—that he was being discriminated against because of his race. Defendant investigated this complaint and concluded it had no merit. After his termination, Plaintiff received permission from the Equal Employment Opportunity Commission to sue. He then brought suit in the District of Colorado, alleging violations of Title VII of the Civil Rights Act and the Colorado Anti-Discrimination Act (CADA). Eventually, the district court granted summary judgment in favor of Defendant.

Meanwhile, by April 2014 Defendant no longer employed *any* L3 Operators for the program in question, according to program manager Roger Healy.[1] Morever, between May 2007 and April 2014 the program had been forced to downsize from 195 civilian employees to just 78 civilian employees.

## II.

We review a district court's summary judgment decision de novo. Felkins v. City of Lakewood, 774 F.3d 647, 650 (10th Cir. 2014). Thus, we will affirm a grant of summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Id. (quoting Fed.R.Civ.P. 56(a)).

---

[1] At some point during 2012, Plaintiff was given the opportunity, along with all other L3 Operators, to complete certification in order to advance to Level 4. Plaintiff failed to obtain this certification.

"Colorado and federal law apply the same standards to discrimination claims." Johnson v. Weld Cnty., Colo., 594 F.3d 1202, 1219 n.11 (10th Cir. 2010). As such, Plaintiff's Title VII and CADA claims "rise or fall together." Id. (citation and internal marks omitted). Absent direct proof of racial discrimination, "a plaintiff in a race discrimination case must rely on the three-part, burden-shifting framework set out by the Supreme Court." Barlow v. C.R. England, Inc., 703 F.3d 497, 505 (10th Cir. 2012) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)). "Under this framework, the plaintiff must first put forth a prima facie case of discrimination." Id.[2] The burden then shifts "to the employer to prove a legitimate, non-discriminatory reason for the adverse employment action." Id. (citation and internal marks omitted). If the employer does so, then the burden shifts back: "[T]he plaintiff must either show that his race . . . was a determinative factor in the defendant's employment decision, or show that the defendant's explanation for its action was merely pretext." Adamson v. Multi Cmty. Diversified Servs., Inc., 514 F.3d 1136, 1145 (10th Cir. 2008) (citation omitted).

Here, in granting summary judgment, the district court accepted Defendant's concession that a prima facie case of discrimination had been made, found Plaintiff

---

[2] Generally speaking, a plaintiff must demonstrate the following for a prima facie case: "(1) he was a member of a protected class; (2) he was qualified and satisfactorily performing his job; and (3) he was terminated under circumstances giving rise to an inference of discrimination." Id. (quoting Salguero v. City of Clovis, 366 F.3d 1168, 1175 (10th Cir. 2004)).

had essentially conceded a legitimate, non-discriminatory reason for the termination (*i.e.*, budget cuts plus low ranking), and focused on explaining why Plaintiff had not shown pretext. On appeal, we are faced with the same posture. That is, the parties agree that both a prima facie case and legitimate, non-discriminatory reason have been provided. Thus, our only task is to analyze whether Plaintiff has shown, by a preponderance of the evidence, that "the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Simmons v. Sykes Enters., Inc., 647 F.3d 943, 947 (10th Cir. 2011).

## III.

For pretext, we look to whether Plaintiff can show that Defendant's "explanation was so weak, implausible, inconsistent or incoherent that a reasonable fact finder could conclude that it was not an honestly held belief but rather was subterfuge for discrimination." Id. at 947–48. We must examine "the facts as they appear to the person making the decision to terminate." Id. (citation omitted). Our role is not, however, "to act as a super personnel department that second guesses employers' business judgments." Id. (citation and internal marks omitted).

Plaintiff contends, in several ways, that Defendant used the 2012 RIF as a pretext for terminating him because of his race. First, Plaintiff repeatedly argues Defendant "manipulated" the ranking system by including Pepe. Comparing Pepe with the other L3 Operators, Plaintiff asserts, was like comparing apples and oranges because Pepe was in a different program and supervised by different persons.

6

Plaintiff provides no evidence for this assertion other than his own say-so, however, and he openly admitted in deposition that he had no personal knowledge of Pepe's background or history with the company. See Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."). In addition, Defendant has put forth evidence indicating Pepe *was* a certified L3 Operator in the same program, with the same supervisor, at the time of the 2012 RIF. Indeed, Plaintiff himself admits elsewhere (contradicting his above assertion) that Pepe was a trainee *in* Plaintiff's program. In any event, even if Pepe was part of a different program or supervised by a different person, it is unclear how this would show pretext. As the district court observed, cross-program or cross-supervisor comparisons would seem essential to large companies. And more practically speaking, Defendant ranked Plaintiff *sixth*. Omitting Pepe would only bump Plaintiff up to fifth, which still presumably would have resulted in his termination.

Second, Plaintiff attacks the ranking system for being subjective. This contention is also without merit, as nothing bars an employer from utilizing subjective criteria in decision-making. See Debord v. Mercy Health Sys. of Kan., Inc., 737 F.3d 642, 657 (10th Cir. 2013) ("[T]he existence of subjective criteria alone is not considered evidence of pretext." (citation omitted)); Conroy v. Vilsack, 707 F.3d 1163, 1177 (10th Cir. 2013) ("[S]ubjectivity is to be expected in every hiring decision."). We will infer pretext only when the evaluation criteria are *entirely*

7

subjective and the process in question is opaque rather than transparent. <u>Conroy</u>, 707 F.3d at 1178 (emphasis added) (citations omitted). Although the 2012 RIF certainly contained some subjectivity, neither of our two key factors—pure subjectivity or opaqueness—was present here. Indeed, the mere fact that Defendant openly utilized a ranking system based on written and established guidelines means the criteria were not *purely* subjective and the process was not opaque. Far from it.

Third, Plaintiff asserts co-workers made offensive racial comments—some in his presence, some not. It is well-settled, however, that "isolated racial comments are insufficient to establish pretext unless they can somehow be tied to the employment actions disputed in the case at hand." <u>Antonio v. Sygma Network, Inc.</u>, 458 F.3d 1177, 1184 (10th Cir. 2006) (citation omitted). And Plaintiff has put forth no evidence that any person with influence over the decision to terminate him—*e.g.*, Ferreira, Barduniotis, or Benavides—made such comments, approved of such comments, or terminated Plaintiff because such comments were made by others. To the contrary, the primary comment that Plaintiff points to was made years before Plaintiff even started at Boeing by a co-worker, Tim Cook, who left Boeing four years before Plaintiff's eventual termination.[3] This is clearly insufficient.

Fourth, Plaintiff contends pretext is demonstrated by the fact that he, an African-American, was selected for termination in every single relevant RIF while

---

[3] As this timeline makes obvious, the comment was not aimed at Plaintiff.

8

he was employed. As unfortunate as this fact may be, we cannot ignore the broader context here: namely, the drastic and ongoing budget cuts necessitating massive layoffs. Looking at this evidence as a whole—wherein Plaintiff's program downsized from 195 employees to 78 employees in just seven years—there is nothing suspicious in one individual being selected for multiple terminations. Cf. Rea v. Martin Marietta Corp., 29 F.3d 1450, 1456 (10th Cir. 1994) ("[I]n a reduction in force case, 'someone has to be let go.'" (citation omitted)). Moreover, Plaintiff ignores the fact that the first two times he was selected for termination Defendant actually *assisted* Plaintiff in finding another job within the company—hardly a sign of racial animus. There is no triable issue of fact here.

Finally, Plaintiff argues we can infer pretext because Healy—again, one of the program's managers—temporarily hid the existence of the L3 Operator job opening for which Plaintiff was eventually hired in 2009. Like his first argument, Plaintiff points only to his own say-so, and he appears to lack personal knowledge on the subject. Furthermore, it is again unclear how this assertion, if true, would demonstrate pretext, as Plaintiff was eventually hired for the position and he makes no allegation that Healy influenced his later termination.[4]

---

[4] Certainly, Healy had broad authority over how many lay-offs would occur and in what areas, but Plaintiff has admittedly "*not* attacked [Defendant's] determination to retain four of the eight L3 Operator employees for the 2012 RIF." (emphasis added). Rather, Plaintiff attacks the selection of him, personally, as one of the bottom four L3 Operators. And Healy did not take any role in deciding which

(continued...)

**IV.**

In the end, Plaintiff does not come close to establishing pretext. See Rea, 29 F.3d at 1456 ("Given Defendant's written policy that those employees with the lowest rankings were to be considered first for layoff, and the fact that Plaintiff ranked last in the departmental ranking for her labor grade, we conclude that Plaintiff's evidence is insufficient to create a genuine fact dispute as to whether Defendant's reasons for choosing Plaintiff for layoff were pretextual."). Not only does he fail to provide any solid evidence, but several of the undisputed facts—such as Defendant's willingness to give him raises and help him find other positions internally—counsel against his position.

AFFIRMED.

Entered for the Court,


Bobby R. Baldock
United States Circuit Judge

----

[4](...continued)
four of the eight L3 Operators to terminate.