**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 4, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

LOCKHEED MARTIN
CORPORATION,

      Petitioner,

  v.

ADMINISTRATIVE REVIEW BOARD,
UNITED STATES DEPARTMENT OF
LABOR,

      Respondent,

ANDREA BROWN,

      Intervenor,

CHAMBER OF COMMERCE OF THE
UNITED STATES OF AMERICA;
NATIONAL EMPLOYMENT
LAWYERS ASSOCIATION,

      Amici Curiae.

No. 11-9524

---

**PETITION FOR REVIEW OF AN ORDER FROM**
**THE UNITED STATES DEPARTMENT OF LABOR**
**(LABR-1:10-050)**

---

Matthew J. Rita (Shella B. Neba with him on the briefs), Ford & Harrison LLP,
Denver, Colorado, for Petitioner.

Tammy R. Daub, Attorney (M. Patricia Smith, Solicitor of Labor; Jennifer S.
Brand, Associate Solicitor; and Megan E. Guenther, Counsel for Whistleblower

Programs, with her on the briefs), United States Department of Labor, Washington, D.C., for Respondent.

Diane S. King (Laura E. Schwartz with her on the brief), King & Greisen, LLP, Denver, Colorado, for Intervenor.

Lloyd B. Chinn and Harris M. Mufson, Proskauer Rose LLP, New York, New York; Robin S. Conrad and Shane B. Kawka, National Chamber Litigation Center, Inc., Washington, D.C., on the brief for Amicus Curiae, Chamber of Commerce for the United States of America.

Michael T. Anderson, Murphy Anderson PLLC, Boston, Massachusetts; Joan M. Bechtold, Counsel of Record, Sweeney & Bechtold, LLC, Denver, Colorado; and Rebecca M. Hamburg, National Employment Lawyers Association, San Francisco, California, on the brief for Amicus Curiae, National Employment Lawyers Association.

---

Before **HOLLOWAY**, **MURPHY**, and **O'BRIEN**, Circuit Judges.

---

**MURPHY**, Circuit Judge.

---

## I.    Introduction

Lockheed Martin Corp. ("Lockheed") seeks to set aside a decision of the Administrative Review Board of the Department of Labor (the "ARB" or the "Board") concluding Lockheed violated Section 806 of the Sarbanes-Oxley Act of 2002 ("Sarbanes-Oxley" or the "Act").  *See* 18 U.S.C. § 1514A(a).  The Board affirmed the decision of an administrative law judge ("ALJ"), who concluded Lockheed violated the Act by constructively discharging employee Andrea Brown after she had engaged in protected activity.  Exercising jurisdiction pursuant to 18

U.S.C. § 1514A(b)(2)(A) and 49 U.S.C. § 42121(b)(4)(A)[1], this court **affirms** the decision of the Board.

## II. Background

Brown worked as Communications Director for Lockheed from June 2000 to February 2008. In 2003, she became the Director of Communications in Colorado Springs, Colorado. In that position, she reported to Wendy Owen, Vice President of Communications, and Ken Asbury, President of Lockheed Martin Technical Operations. In May 2006, Brown began having difficulty getting responses from Owen on work-related matters. She discussed the problem with Asbury as well as Tina Colditz, a coworker and personal friend. Colditz was a longtime Lockheed employee who reported directly to Owen. Colditz also ran a pen pals program for the company, through which Lockheed employees could correspond with members of the U.S. military deployed in Iraq. Colditz told Brown that Owen had developed sexual relationships with several of the soldiers in the program, had purchased a laptop computer for one soldier, sent inappropriate emails and sex toys to soldiers stationed in Iraq, and traveled to welcome-home ceremonies for soldiers on the pretext of business while actually taking soldiers to expensive hotels in limousines for intimate relations. Colditz

---

[1]Sarbanes-Oxley incorporates the procedural provisions, including those provisions governing appellate review, set forth in the Wendell H. Ford Aviation Investment and Reform Act for the 21st Century, 49 U.S.C. § 42121(b). *See* 18 U.S.C. § 1514A(b)(2)(A).

told Brown she was concerned Owen was using company funds for these activities, and Brown understood that most employee expenses incurred were passed on to Lockheed's customers, in this case the government. Brown thus became concerned Owen's actions were fraudulent and illegal and that there could be media exposure which could lead to government audits and affect the company's future contracts and stock price.

Brown brought her concerns to Jan Moncallo, Lockheed's Vice President of Human Resources. Moncallo told Brown she would submit an anonymous ethics complaint on Brown's behalf, and that she would be protected from retaliation because no one would know her identity. On May 25, 2006, Moncallo sent an email to Jean Pleasant, the office Ethics Director, for an investigation. The email detailed Brown's allegations, including, *inter alia*, the purchase of a laptop with company funds, the use of company funds to rent limos to transport soldiers, the use of company funds for lodging with soldiers, the use of company funds to purchase gifts for soldiers, communications with staff stating she was meeting with generals when in fact she was meeting with soldiers, not responding to calls from staff due to non-business related meetings with soldiers, having affairs with soldiers, sending pornographic material to soldiers, using her position to influence staff to cover for her, and tarnishing Lockheed's image. The email identified Brown as an individual who should have some knowledge about the allegations.

Lockheed investigated Owen from May 2006 to August 2006. Within a few days of Brown's anonymous complaint, the pen pal program was discontinued. Owen later changed positions but remained a vice president. Apparently believing Colditz to have reported her, Owen began to treat Colditz unfairly. Brown recalled an email from Colditz indicating Owen had told Colditz she would soon be out of work. In the fall of 2006, Brown revealed to Asbury and Colditz that it was she who made the complaint. On December 19, 2006, Owen called Brown to try to find out who had reported her. According to Brown, Owen told her she had lost her annual bonus due to the complaint. Brown revealed to Owen that Brown had told Moncallo "a few things," but stated she was not sure if her comments had resulted in the complaint. Brown reported the phone call with Owen to Asbury and Moncallo. Prior to 2006, Brown received a "high contributor" or "exceptional contributor" rating in her performance evaluations. In late 2006, and thereafter, however, Brown received a lower rating of "successful contributor."

On February 22, 2007, Lockheed announced to all employees it was undergoing a corporate-structure reorganization. On March 1, 2007, Lockheed's Communications Department announced that further reorganizations would be made. Brown began reporting to Judy Gan, the Senior Vice President of Communications. Owen became Gan's assistant, but retained her title as Vice President. According to Brown, Gan's attitude toward her was negative from the

beginning of their professional relationship. For example, Gan told Brown she was not the right person for her current position and indicated there would be a reduction in staff. On June 12, 2007, Brown received a phone call from Owen who announced that Brown's job had been posted on the internet and that she should get her resume together. Distraught, Brown told Asbury and Gan about the phone call in an email.

At this point, Brown first began discussing with Moncallo the possibility of leaving the company. However, she instead decided to apply for the new Director of Communications position. In the course of applying, she learned that the newly-posted position was classified as "Level 6." Brown held a "Level 5" position at the time she applied. Brown sent an email to Gan, Asbury, Owen, and a more senior manager in the communications department, informing them she was applying for the position. Shortly after sending the email, Brown received a phone call from Gan, who lambasted her for applying. Gan told Brown she was not qualified for the position, that she had performed poorly since she had been with Lockheed, and that she had hurt her future with Lockheed by applying. Brown thereafter withdrew her application for the position.

In September 2007, Lockheed hired David Jewell as the new Director of Communications. Owen had a good relationship with Jewell prior to his hiring and had told him to apply for the position. Owen was also a member of the selection committee which considered Jewell. Jewell sought Owen's advice

regarding his position and his employees, and was told that Brown had received less-than-perfect evaluations in the past. Shortly after Jewell assumed his new position, Brown was asked to vacate her office and either work from home or use the visitor's office. The visitor's office doubled as a storage room for office supplies, files, and canned food donations that were being collected for a food drive. Brown also lost her title and her supervisory responsibilities over four employees. Further, Gan told Brown she could not attend an annual communications conference, which she had always attended previously, even though she was to receive an award at the conference. Around this time, Brown repeatedly requested information as to the nature of her position and future with Lockheed, but received no answer. Jewell informed her that either she or a Lockheed employee in Houston would be laid off, but would not provide her with any additional information. On January 3, 2008, Brown came into the office at Jewell's request and found someone else working in the visitor's office. When she asked Jewell what she should do, he told her he was looking for a cubicle for her. Brown protested that, as a Level 5 employee with a leadership position (L-Code), she was entitled to an office. Jewell responded that he was in the process of removing her L-Code. Brown then had an emotional breakdown, fell into a deep depression, and took medical leave.

Brown brought a complaint with the Occupational Safety and Health Administration (OSHA)[2] on January 25, 2008, alleging violations of Sarbanes-Oxley. On February 4, 2008, with the assistance of counsel, Brown provided Lockheed with a notice of forced termination. On February 6, 2008, Brown amended her OSHA complaint to allege constructive discharge. OSHA denied Brown's complaint on May 27, 2008.

Brown subsequently requested a hearing before the Office of Administrative Law Judges. A two-day hearing was held in Denver, Colorado, at which the parties were given the opportunity to adduce testimony, offer documentary evidence, and submit post-hearing briefs. The ALJ received into evidence over seventy exhibits and heard live testimony from three witnesses. The ALJ also considered the videotape deposition testimony from five witnesses. In his Recommended Decision and Order, the ALJ found that Brown had engaged in protected activity; she suffered materially adverse employment actions,

---

[2]An employee alleging wrongful discharge under Sarbanes Oxley may file a complaint with the Secretary of Labor. 49 U.S.C. § 42121(b)(1). The Secretary must then "conduct an investigation and determine whether there is reasonable cause to believe that the complaint has merit." *Id.* § 42121(b)(2)(A). After the Secretary has notified the parties of his findings, either party may request a hearing on the record. *Id.* The Secretary of Labor has delegated his investigative responsibilities under the Act to OSHA. *See* Secretary's Order No. 4-2010, 75 Fed. Reg. 55,355, 55,355–56 (Sept. 10, 2010); 29 C.F.R. 1980.104(a). Objections and requests for hearings must be filed with the Chief Administrative Law Judge of the Department of Labor. 29 C.F.R. § 1980.106. Either party may seek review of an ALJ's decision by the Board. *See id.* § 1980.110

including constructive discharge; and her engagement in protected activity was a contributing factor in the constructive discharge. The ALJ awarded reinstatement, back pay, medical expenses, and non-economic compensatory damages in the amount of $75,000.

Lockheed timely appealed the ALJ's decision to the Administrative Review Board of the Department of Labor, which affirmed. The Board concluded the ALJ's findings of fact were supported by substantial evidence and adopted them as its own. The Board further concluded the ALJ's factual findings were largely based on the acceptance of Brown's testimony as credible and rejection of all contrary testimony. It further resolved that Brown's testimony provided more than enough substantial evidence to support the ALJ's factual findings. Lockheed now seeks review from this court pursuant to 18 U.S.C. § 1514A(b)(2)(A) and 49 U.S.C. § 42121(b)(4)(A).

## III. Discussion

### A. Standard of Review

This court reviews the Final Decision and Order of the Board under the Administrative Procedure Act (APA), 5 U.S.C. § 706. *See* 18 U.S.C. § 1514A(b)(2)(A); 49 U.S.C. § 42121(b)(4)(A) ("Review shall conform to chapter 7 of title 5, United States Code."); *Hall v. U.S. Dep't of Labor*, 476 F.3d 847, 850 (10th Cir. 2007) ("We review the ARB's decision under the standard established by the Administrative Procedure Act."). Under the APA: "To the extent

necessary to decision and when presented, the reviewing court shall decide all

relevant questions of law . . . [and] . . . hold unlawful and set aside agency action,

findings, and conclusions found to be . . . arbitrary, capricious, an abuse of

discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).

Thus, the Board's legal determinations are reviewed de novo, giving deference to

its construction of the Act if reasonable.  *Trimmer v. Dep't of Labor*, 174 F.3d

1098, 1102 (10th Cir. 1999).  The Board's decision "is entitled to a presumption

of regularity, and the challenger bears the burden of persuasion."  *San Juan

Citizens Alliance v. Stiles*, 654 F.3d 1038, 1045 (10th Cir. 2011) (citation

omitted).  The Board's factual determinations may be set aside only if they are

"unsupported by substantial evidence."  5 U.S.C. § 706(2)(E).  "Substantial

evidence is such relevant evidence a reasonable person would deem adequate to

support the ultimate conclusion."  *Hall*, 476 F.3d at 854 (quotation omitted).  The

substantial-evidence standard "requires more than a scintilla but less than a

preponderance of the evidence."  *Id.*  The standard "does not allow a court to

displace the agency's choice between two fairly conflicting views, even though

the court would justifiably have made a different choice had the matter been

before it *de novo*."  *Trimmer*, 174 F.3d at 1102 (quotations omitted).  Moreover,

"[b]ecause the [Board's] opinion is in agreement with and based in part on the

ALJ's credibility determinations, it is entitled to great deference."  *Id.*  When

applying the substantial-evidence standard, "[t]his court reviews the entire record,

-10-

including the ALJ's recommendation and any evidence contrary to the [Board's]

decision." *Id.*

B.      Statutory Framework

Section 806, the anti-retaliation provision of Sarbanes-Oxley, provides, in

relevant part:

> **Whistleblower protection for employees of publicly traded
> companies**.--No [publicly traded] company . . . , or any officer [or]
> employee . . . of such company . . . may discharge, demote, suspend,
> threaten, harass, or in any other manner discriminate against an
> employee in the terms and conditions of employment because of any
> lawful act done by the employee—
>
>> (1) to provide information, cause information to be provided,
>> or otherwise assist in an investigation regarding any conduct
>> which the employee reasonably believes constitutes a violation
>> of . . . [18 U.S.C. §§] 1341, 1343, 1344, or 1348, any rule or
>> regulation of the Securities and Exchange Commission, or any
>> provision of Federal law relating to fraud against shareholders,
>> when the information or assistance is provided to or the
>> investigation is conducted by—
>>
>>> . . . .
>>
>>> (C) a person with supervisory authority over the
>>> employee . . . .

18 U.S.C. § 1514A.  The regulations implementing Section 806, as well as the

decisions of numerous circuit courts, establish the elements of a prima facie claim

for violation of § 1514A.  A claimant must show: (1) she engaged in protected

activity or conduct; (2) the employer knew of her protected activity; (3) she

suffered an unfavorable personnel action; and (4) her protected activity was a

contributing factor in the unfavorable personnel action. *See* 18 U.S.C.

§ 1514A(b)(2)(C); 49 U.S.C. § 42121(b); 29 C.F.R. § 1980.104(b)(1) (2007);

*Harp v. Charter Commc'ns, Inc.*, 558 F.3d 722, 723 (7th Cir. 2009) (collecting

cases). The Board and ALJ concluded Brown had proven each element of her

claim by a preponderance of the evidence. On appeal, Lockheed argues the

Board's findings of fact and conclusions of law were erroneous as to the first,

third, and fourth elements of Brown's prima facie case.[3]

### C. Protected Activity

The ALJ concluded Brown established by a preponderance of the evidence

that she (1) reasonably believed Owen had committed mail or wire fraud, *see* 18

U.S.C. §§ 1341, 1343; and (2) communicated that belief "definitely and

specifically" to Lockheed. The ALJ also concluded, however, that Brown

"fail[ed] to establish protected activity under a general shareholder fraud theory

on the basis of loss of shareholder value." The Board affirmed the ALJ's finding

that Brown engaged in protected activity by reporting mail and wire fraud but did

not address the finding that Brown's activity did not relate to shareholder fraud.

---

[3]An employer may still avoid liability notwithstanding an employee's prima facie showing under Section 806 by proving, through clear and convincing evidence, it would have taken the same unfavorable personnel action in the absence of the protected activity. 49 U.S.C. § 42121(b)(2)(B); *Harp. v. Charter Commc'ns, Inc.*, 558 F.3d 722, 723 (7th Cir. 2009). Because Lockheed did not attempt to make such a showing below, Brown prevails if she meets her prima facie burden.

On appeal, Lockheed argues that employee reports of mail and wire fraud that do not allege shareholder fraud are not protected under Section 806, and that the Board erred in concluding Brown "definitely and specifically" communicated a belief that Owen engaged in mail or wire fraud.

### 1.     Scope of 18 U.S.C. § 1514A(a)

Lockheed argues the ALJ's uncontested finding that Brown's complaint did not relate to shareholder fraud[4] is fatal to her retaliation claim because Section 806's protection of employees who report conduct reasonably believed to constitute mail or wire fraud applies only if such conduct "relat[es] to fraud against shareholders." 18 U.S.C. § 1514A(a)(1). Thus, under Lockheed's reading of Section 806, the phrase "relating to fraud against shareholders" modifies not only the clause which immediately precedes it, "any provision of Federal law," but also the other enumerated protected activities. Lockheed thus reads the statute as prohibiting a covered employer from retaliating against an employee who provides information regarding violations of 18 U.S.C. §§ 1341, 1343, 1344, and 1348; rules or regulations of the Securities and Exchange Commission; or any

---

[4]Brown argues Lockheed waived any argument that all employee complaints under Section 806 must relate to shareholder fraud. 29 C.F.R. § 1980.110(a). Lockheed, however, sufficiently preserved the issue by challenging the conclusion of the ALJ that Brown established protected activity on the basis of mail and wire fraud.

provision of federal law, only if such alleged violations relate to fraud against shareholders. *See id.* This interpretation of the statute is incorrect.

The plain, unambiguous text of § 1514A(a)(1) establishes six categories of employer conduct against which an employee is protected from retaliation for reporting: violations of 18 U.S.C. § 1341 (mail fraud), § 1343 (wire fraud), § 1344 (bank fraud), § 1348 (securities fraud), any rule or regulation of the SEC, or any provision of Federal law relating to fraud against shareholders. Because 18 U.S.C. §§ 1341, 1343, 1344, and 1348 are all clearly provisions of federal law, Lockheed's reading of the statute would render their enumeration in § 1514A(a)(1) wholly superfluous. It is a rudimentary canon of statutory construction that such superfluities are to be avoided. *See, e.g., Hibbs v. Winn*, 542 U.S. 88, 101 (2004) ("The rule against superfluities complements the principle that courts are to interpret the words of a statute in context." (citing 2A N. Singer, Statutes and Statutory Construction § 46.06 at 181–86 for the proposition that "[a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant")); *United States v. Dawes (In re Dawes)*, 652 F.3d 1236, 1242 (10th Cir. 2011). Congress could have accomplished the more limited purpose attributed to it by Lockheed by limiting whistleblower protection under Sarbanes-Oxley only to an employee who reports conduct "the employee reasonably believes constitutes a violation of any provision of Federal law relating to fraud

-14-

against shareholders."  Because Congress did not so phrase the statute, the proper interpretation of § 1514A(a) gives each phrase distinct meaning and holds a claimant who reports violations of 18 U.S.C. §§ 1341, 1343, 1344, or 1348 need not also establish such violations relate to fraud against shareholders to be protected from retaliation under the Act.

Even if the language of § 1514A(a) were ambiguous, Lockheed's interpretation of the statute is inconsistent with the interpretation of the agency charged with its enforcement.  This court affords deference to the Board's interpretation of the Act as expressed in formal adjudications under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844 (1984).  *See United States v. Mead Corp.*, 533 U.S. 218, 230 & n.12 (2001) (noting agencies may be entitled to *Chevron* deference when statutory interpretations arise from formal adjudication); *Trimmer*, 174 F.3d at 1102 (applying *Chevron* deference to Board's interpretation of whistleblower protection provisions in Energy Reorganization Act of 1974).  Under *Chevron*, when faced with an ambiguous statute which Congress has vested an agency with the power to interpret, "the question for the court is whether the agency's answer is based on a *permissible* construction of the statute."  467 U.S. at 843 (emphasis

-15-

added).  Because the Board's construction of § 1514A(a) is indisputably

permissible, this court is bound to defer to it.[5]

Relying on *Platone v. FLYi, Inc.*, No. 04-154, 2006 WL 3246910 (Admin.

Rev. Bd. Sept. 29, 2006), *aff'd on other grounds*, 548 F.3d 322 (4th Cir. 2008),

Lockheed argues the Board's interpretation of Section 806 is not entitled to

*Chevron* deference because it constitutes a change from the agency's previously

expressed position.  This argument is unpersuasive.  The Supreme Court has

rejected the notion that an agency's interpretation of a statute it administers is to

be regarded with skepticism when its position reflects a change in policy.  *See*

*FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 514-15 (2009) ("We find no

basis in the Administrative Procedure Act or in our opinions for a requirement

that all agency change be subjected to more searching review. . . . [An agency]

need not demonstrate to a court's satisfaction that the reasons for the new policy

are *better* than the reasons for the old one; it suffices that the new policy is

permissible under the statute, that there are good reasons for it, and that the

agency *believes* it to be better, which the conscious change of course adequately

indicates.").[6]  Because the Board's interpretation of Section 806 is based on a

[5]The Board recently reaffirmed its holding that a complainant is protected from retaliation under Section 806 even if the complaints at issue do not relate to fraud against shareholders in *Sylvester v. Parexel Int'l LLC*, No. 07-123, 2011 WL 2165854 at *15–16 (Admin. Rev. Bd. May 25, 2011).

[6]Lockheed's reliance on *Salazar v. Butterball, LLC*, 644 F.3d 1130, 1139

(continued...)

permissible construction of the statute, we hold an employee complaint need not specifically relate to shareholder fraud to be actionable under the Act.

2.    Reasonable Belief

Section 806 requires that, to be protected from retaliation, an employee must "reasonably believe" the conduct she reports violates one of the enumerated federal statutes or regulations. 18 U.S.C. § 1514A(a)(1). Further, the ALJ required Brown to prove she "definitively and specifically" communicated her belief Owen had engaged in illegal activity to her supervisor.[7] The Board has defined "reasonable belief" to include both a subjective and an objective component; an employee must actually believe in the unlawfulness of the employer's actions and that belief must be objectively reasonable. *Sylvester*, 2011 WL 2165854 at *11. The decisions of multiple Circuit Courts of Appeals are in accord. *See Harp*, 558 F.3d at 723 (collecting cases). "Objective

---

[6](...continued)
(10th Cir. 2011), and *Pacheco v. Whiting Farms, Inc.*, 365 F.3d 1199, 1205 n.3 (10th Cir. 2004), is misplaced. The agency actions reviewed in those cases took the form of informal opinion letters, which are not entitled to *Chevron* deference. *See Salazar*, 644 F.3d at 1139 (applying *Skidmore* deference to agency opinion letter); *Pacheco*, 365 F.3d at 1205 n.3 (same).

[7]Recently, the Board explicitly disavowed the "definitive and specific" evidentiary standard for Sarbanes-Oxley complainants, concluding the standard has no basis in the text of Section 806 and rejecting the contrary holdings of circuit courts. *Sylvester*, 2011 WL 2165854 at *14-15. We need not pass on this issue here, however, because we conclude there was substantial evidence supporting the Board's conclusion that Brown's complaint definitively and specifically related to the federal mail and wire fraud statutes.

-17-

reasonableness is evaluated based on the knowledge available to a reasonable person in the same factual circumstances with the same training and experience as the aggrieved employee." *Id.* (quotation omitted).

The conclusion of the ALJ and Board that Brown met these requirements is supported by substantial evidence. Brown testified that, based on her experience as a Lockheed employee, costs incurred by Lockheed employees were billed back to the customer, often the government. She further testified she reported these concerns to Asbury, who could not recall speaking to her, and Moncallo, who could. The ALJ found Moncallo's testimony to be "essential." Moncallo agreed employee travel expenses and purchases of equipment are generally billed to the government. Further, while Moncallo testified Brown did not use the words "fraud" or "illegal," Moncallo recognized that some of the actions Brown complained of could be considered fraudulent and illegal. Additionally, although Asbury and Moncallo testified that Brown did not specifically use the words "fraud" and "illegal" in her reports to them, the ALJ found this disagreement to tarnish Brown's testimony only somewhat since the ALJ considered Brown's testimony to be credible. Thus, the ALJ found Brown communicated a reasonable belief that Owen was fraudulently and illegally diverting company funds for her personal use, and that she was using the company's pen pal program to perpetuate the scheme. This finding was heavily and explicitly based on a credibility determination, i.e., the ALJ chose to place more weight on Brown's testimony

-18-

that she used the terms "fraud" and "illegal" than on the contrary testimony of Asbury and Moncallo. Lockheed makes no sufficiently persuasive argument for this court to take the extraordinary step of disturbing that credibility determination. *See Trimmer*, 174 F.3d at 1102.[8]

Lockheed also argues any belief Owen's activities amounted to fraud is objectively unreasonable as a matter of law due to a lack of evidence Owen acted with specific intent to defraud. *See United States v. Washington*, 634 F.3d 1180, 1183 (10th Cir. 2011) (listing intent to defraud as an element of 18 U.S.C. § 1341). Specifically, Lockheed argues Owen's lack of attempts to conceal her involvement with the pen pal program negate any inference she acted with the requisite intent. While attempted concealment is one method of proving specific intent in a fraud case, *see United States v. Prows*, 118 F.3d 686, 692 (10th Cir. 1997), it is not essential. For example, this court has also recognized intent can be inferred from whether a defendant "profited or converted money to his own use." *Id.* (quotation omitted). Brown's allegations clearly amounted to a claim that Owen had converted company money to her own use. There was thus substantial evidence supporting the ALJ and Board's findings that Brown

---

[8]Lockheed suggests Brown's testimony as to the substance of her May 2006 ethics complaint is unreliable and in conflict with the contemporaneous documentation prepared by Moncallo and Pleasant. The documentation upon which Lockheed relies (an email from Moncallo to Pleasant concerning Brown's allegations and Pleasant's memorandum after the investigation was concluded), however, do not conflict with Brown's testimony.

reasonably believed Owen had committed fraud and that she definitely and specifically communicated that belief to her superiors.

D.    Constructive Discharge[8]

In *Strickland v. United Parcel Service, Inc.*, this court set forth the requirements for establishing constructive discharge:

> Constructive discharge occurs when an employer unlawfully creates working conditions so intolerable that a reasonable person in the employee's position would feel forced to resign. The plaintiff's burden is substantial. The standard is objective: the employer's subjective intent and the employee's subjective views on the situation are irrelevant. Whether a constructive discharge occurred is a question of fact.

555 F.3d 1224, 1228 (10th Cir. 2009) (quotation and citations omitted). In considering whether a constructive discharge occurred, the court considers the totality of the circumstances. *Narotzky v. Natrona Cnty. Mem'l Hosp.*, 610 F.3d 558, 565 (10th Cir. 2010).

Lockheed's challenge to the Board's conclusion that Brown suffered an adverse personnel action because she was constructively discharged is twofold.

---

[8]Brown's formal complaint asserted she was constructively discharged from her position at Lockheed as a result of her protected activity. Her complaint did not seek to impose liability on Lockheed for other, lesser adverse employment actions such as demotions, threats, or harassment. Further, neither Brown nor the Board have argued on appeal that the Board's decision can be affirmed absent a showing of constructive discharge. We thus assume, as all parties seem to agree, that establishing a constructive discharge is essential for Brown to maintain her cause of action against Lockheed under Section 806, noting only that such a showing is not required in all claims of retaliation under the Act.

First, Lockheed argues the ALJ applied the wrong legal standard to Brown's constructive discharge claim and that the Board incorporated the ALJ's mistake in its Final Decision and Order. Second, Lockheed argues there is insufficient record evidence to support the conclusion that Brown was constructively discharged. These arguments are unpersuasive.

Regarding Lockheed's first argument, in its Recommended Decision and Order, the ALJ recited the correct legal standard for a claim of constructive discharge and concluded, after reciting the litany of adverse circumstances Brown faced following her ethics complaint, "a reasonable person such as Complainant would see resignation as her only option under these circumstances." While portions of the ALJ's opinion also analyze whether Lockheed's actions were "materially adverse" to Brown, that is, "harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination," *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006), that analysis does not conflict with the ALJ's ultimate conclusion that Brown's working conditions became objectively intolerable so as to constitute a constructive discharge. To that end, the ALJ specifically acknowledged that "[e]stablishing a constructive discharge claim requires the showing of an even more offensive and severe work environment than is needed to prove a hostile work environment." Recommended Dec. & Order at 44. Moreover, the Board's decision makes no reference to the standard for "material adversity." Rather, the

-21-

Board explicitly concluded "a reasonable person in Brown's shoes would have found continued employment intolerable and would have been compelled to resign." Final Dec. & Order at 10–11. Thus, even if the ALJ erroneously applied a more lenient standard when analyzing Brown's claim of constructive discharge, any such error was corrected by the Board. To the extent Lockheed argues the ALJ and Board recited the correct standard but were, in fact, applying a more lenient standard, its position is inconsistent with the presumption of regularity attached to agency action. *See San Juan Citizens Alliance*, 654 F.3d at 1045.

As to Lockheed's second argument, numerous facts cited by the ALJ and Board are indicative of constructive discharge. Prior to making an ethics complaint, Brown held a leadership position, had her own office, and received consistently high performance ratings. After her complaint, Brown received lower performance ratings. A position with an identical job description to the job Brown had been performing for the previous five years was posted on Lockheed's website. When Brown indicated she would apply for the new position, Gan strongly discouraged her from doing so and told her she was not qualified. When Jewell was selected for the new position, Brown lost her title, office, supervisory responsibilities, and L-code.[9] Brown was made to work from home or out of the

_____

[9]The ALJ also found Brown was required to surrender her parking space to Jewell, and its finding was subsequently affirmed by the Board. Lockheed vigorously contests the evidentiary basis for this finding, pointing to deposition

(continued...)

visitor's office, which doubled as a storage room.  She was also denied

permission to attend an annual communications conference which she had

attended in the past and where she was scheduled to be recognized with an award.

Most importantly, Brown was told she would be one of two employees considered

for a layoff and kept in a constant state of uncertainty as to whether she would

continue to have a job and, if so, what her job would be.  That uncertainty

continued when, after taking medical leave due to the stress and uncertainty

regarding her job situation, she received no response to her inquiries as to

whether she was laid off.

A reasonable person would deem this evidence adequate to support the

Board's ultimate conclusion that Brown's working conditions were so intolerable

she would have viewed quitting as her only option.  *See Hall*, 476 F.3d at 854.

---

[9](...continued)
testimony that Brown chose to make her parking space available to Jewell.  Our conclusion that the Board's decision is supported by substantial evidence, however, is not dependent on whether Brown's loss of her parking space was voluntary or mandatory.  Acknowledging that this point of contention by itself is relatively trivial, Lockheed argues it should undermine this court's confidence in the integrity of the Board's factual findings as a general matter.  This invitation to generalized skepticism runs contrary both to the standard of review applicable to agency decisions, *see San Juan Citizens Alliance v. Stiles*, 654 F.3d 1038, 1045 (10th Cir. 2011), and to appellate procedure generally, *see United States v. Stephenson*, 452 F.3d 1173, 1182 n.4 (10th Cir. 2006) ("We have been abundantly clear that a party before this Court bears the responsibility of tying the relevant facts to the record in order to carry the burden of proving error.  This Court has no responsibility to sift through the record to find support for the claimant's arguments." (quotation and citation omitted)).

The circumstances Brown faced at the time she tendered her resignation are analogous to those faced by employees in multiple instances in which this court has found constructive discharge. *See, e.g., Strickland*, 555 F.3d at 1229 (concluding plaintiff had presented sufficient evidence to support claim of constructive discharge when she "believe[ed] her job was in jeopardy, . . . was repeatedly told by her supervisors her performance was unacceptable, and . . . was not provided support to perform her job when she requested it"); *Acrey v. Am. Sheep. Indus. Ass'n*, 981 F.2d 1569, 1574–75 (10th Cir. 1992) (affirming jury finding of constructive discharge when employee's "supervisor had confronted her with a litany of performance shortcomings; long-standing job responsibilities were taken from her; and she received inadequate information and training to perform her new duties").

Lockheed's attempts to undercut the Board's findings are unavailing. Lockheed argues Brown had alternatives to quitting, and left prematurely before the details of those alternatives were revealed to her. *See Exum v. U.S. Olympic Comm.*, 389 F.3d 1130, 1136 (10th Cir. 2004) (rejecting claim of constructive discharge and noting that "even after Plaintiff submitted his resignation, the [employer] provided him with alternatives to quitting and offered to investigate his complaints"); *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1222 (10th Cir. 2002) (concluding employee allegations failed to raise inference of constructive discharge when employee "resigned before he had complete details as to the

-24-

position into which [the employer] was in the process of transferring him"). Unlike the employers in *Exum* and *Garrett*, however, Lockheed points to no evidence in the record that Brown was ever made aware of any purported alternatives. Even before this court, Lockheed does not identify any alternatives available to Brown. Instead, Lockheed simply points to evidence in the record indicating Jewell and Gan were in the process of evaluating the make-up of the communications team at the time of Brown's resignation. Such evidence does not undermine the Board's finding of constructive discharge.

Lockheed further argues Brown herself had repeatedly given notice that she intended to resign and that her final resignation notice, which was prepared with the assistance of counsel, indicates she was in control of the circumstances of her resignation. Even assuming Lockheed's account of the record is correct, Brown's attempts to stay at Lockheed are irrelevant to the question of whether conditions were so intolerable that she had no alternative but to quit. *See EEOC v. PVNF, L.L.C*, 487 F.3d 790, 806 n.10 (10th Cir. 2007) (noting the constructive discharge "standard cuts both ways—just as an employee's subjective feelings that her working conditions were intolerable is not controlling in the constructive discharge analysis, neither is an employee's desire to continue working despite conditions so intolerable any reasonable employee would have long since quit"). At best, Lockheed's challenges to the Board's finding of constructive discharge indicate only that the Board could have taken a different view of the evidence

than it ultimately adopted, and are therefore insufficient to disturb the Board's factual findings on appeal. *Trimmer*, 174 F.3d at 1102.

E.    Contributing Factor

To establish a prima facie case under Section 806, a complainant must show her protected activity was a contributing factor in the unfavorable personnel action. 18 U.S.C. § 1514A(b)(2)(C); 49 U.S.C. § 42121(b)(2)(B)(I); 29 C.F.R. § 1980.109(a); *Harp*, 558 F.3d at 723. This element is broad and forgiving: the Board has defined a "contributing factor" as "any factor, which alone or in combination with other factors, tends to affect *in any way* the outcome of the decision." *Klopfenstein v. PCC Flow Techs. Holdings, Inc.*, No. 04-149, 2006 WL 3246904, at *13 (Admin. Rev. Bd. May 31, 2006) (emphasis added) (quotation omitted); *see also Allen*, 514 F.3d at 476 n.3. "[T]he contributing factor standard was 'intended to overrule existing case law, which requires a whistleblower to prove that his protected conduct was a "significant," "motivating," "substantial," or "predominant" factor in a personnel action in order to overturn that action.'" *Klopfenstein*, 2006 WL 3246904, at *13 (quoting *Marano v. Dep't of Justice*, 2 F.3d 1137, 1140 (Fed. Cir. 1993)). Temporal proximity between the protected activity and adverse employment action may alone be sufficient to satisfy the contributing factor test. *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 1003 (9th Cir. 2009); *see also Marx v. Schnuck Mkts., Inc.*, 76 F.3d 324, 329 (10th Cir. 1996) (stating, in context of Fair Labor Standard

Act's "motivating factor" element, "protected conduct closely followed by adverse action may justify an inference of retaliatory motive").

The conclusion that Brown's protected activity was a contributing factor in her eventual constructive discharge was supported by the Board's finding that the adverse employment actions Brown experienced began shortly after the conclusion of the investigation against Owen. This finding is supported by substantial evidence. The investigation into Brown's allegations against Owen concluded with the preparation of a formal written report on August 21, 2006. In December 2006 Owen called Brown several times, attempting to determine who had reported her. Eventually, Brown revealed to Owen that she may have shared some information with Moncallo regarding Owen's activities. Shortly thereafter, the cascade of difficulties which culminated in Brown's constructive termination—her lower performance ratings, Gan's harsh treatment of her, and the loss of her privileges and responsibilities as Director of Communications—began.

Lockheed seeks to discredit this conclusion by arguing a significant amount of time passed between Brown's report of Owen's activities and her ultimate constructive discharge. Specifically, Lockheed argues more than twenty months passed between Brown's ethics complaint in May 2006 and her departure from the company in January 2008. Even if the time is calculated from December 2006, when Owen became aware it was Brown who made the ethics complaint against her, Lockheed argues the adverse action and the protected activity are still

-27-

separated by a full calendar year. Lockheed relies on *Meiners v. University of Kansas*, 359 F.3d 1222, 1231 (10th Cir. 2004), a case involving a claim of retaliation under Title VII of the Civil Rights Act, for the proposition that a period of two to three months between an employee's protected activity and an adverse employment action is insufficient to establish causation. *See id.* (stating a period of just under three months was "probably" too long "under our precedents" to "establish causation by temporal proximity alone"). *A fortiori*, Lockheed argues, a period of four to six times as long is also insufficient to establish causation. The plaintiff in *Meiners*, however, was required to make a prima facie showing of causation, 359 F.3d at 1229, whereas Brown was required only to show her protected activity was a contributing factor in her discharge, *Klopfenstein*, 2006 WL 3246904 at *13. More importantly, when evaluating temporal proximity for purposes of determining whether Brown's protected activity was a contributing factor in her constructive discharge, the relevant time frame is not when the constructive discharge occurred, but when the conduct leading up to the discharge began. *Marx*, 76 F.3d at 329 (stating temporal proximity in FLSA case may be inferred "where the pattern of retaliatory conduct begins soon after the [protected activity] and only culminates later in actual discharge"). Moreover, unlike the employee in *Meiners*, Brown's showing that her protected activity was a contributing factor in her constructive discharge was not based solely on temporal proximity. *Cf.* 359 F.3d at 1231–32.

-28-

The Board also concluded that, although neither Gan nor Jewell knew of Brown's ethics complaint against Owen, both were poisoned against Brown by Owen's biased reports regarding Brown's professional competence. This court has applied the subordinate bias, or "cat's paw" theory of liability in other employment discrimination contexts. *See Simmons v. Sykes Enters., Inc.*, 647 F.3d 943, 949 (10th Cir. 2011) (applying theory in context of ADEA claim); *EEOC v. BCI Coca-Cola Bottling Co. of L.A.*, 450 F.3d 476, 484–85 (10th Cir. 2006) (same in context of Title VII claim). The Supreme Court recently endorsed the theory in the context of an action under the Uniformed Services Employment and Reemployment Rights Act (USERRA). *Staub v. Proctor Hosp.*, 131 S. Ct. 1186, 1191–92 (2011). Importantly, however, the required showing to establish causation for a claimant under Section 806 is less onerous than the showing required under Title VII, the ADEA, or USERRA. *Compare Klopfenstein*, 2006 WL 3246904 at *13 (noting "contributing factor" test distinct from, and more lenient than, other causation standards), *with Simmons*, 647 F.3d at 949 (distinguishing ADEA requirement that plaintiff show age was the "but-for" cause of adverse employment action from Title VII and USERRA's "motivating factor" tests). We thus must determine whether the ALJ's finding that Owen "poisoned" Gan and Jewell's opinion of Brown is supported by substantial evidence, keeping in mind that Brown satisfies the causation element of her Section 806 claim by

demonstrating merely that her ethics complaint contributed to the adverse employment actions taken against her.[10]

We conclude it is. The ALJ accepted as credible Brown's testimony that Gan was inexplicably hostile to her from their first encounter following the reorganization of the company in early 2007. Further, the ALJ accepted as credible Brown's account of Owen placing a phone call to Brown in which she mockingly advised her that her job had been posted on the company website and

---

[10]Lockheed contests the notion that there is a meaningful difference in the causation requirements of Section 806 and other employment-discrimination statutes, quoting a portion of *Simmons v. Sykes Enterprises, Inc.*, 647 F.3d 943, 949 (2011), which provides "the underlying principles of agency upon which subordinate bias theories are based apply equally to all types of employment discrimination." This quotation is taken out of context. The full paragraph in which the quotation upon which Lockheed relies provides:

> We must first consider whether the holding in *Staub* applies to discrimination cases brought under the ADEA. Unlike Title VII and the USERRA, "the ADEA's text does not provide that a plaintiff may establish discrimination by showing that age was simply a motivating factor," the operative phrase relied upon in *Staub*. A plaintiff alleging age discrimination must instead prove age was a "but for" cause of her termination. Despite this distinction, the underlying principles of agency upon which subordinate bias theories are based apply equally to all types of employment discrimination *discussed here*. Indeed, this circuit has applied the subordinate bias doctrine to cases arising under both Title VII and the ADEA.

*Id.* at 949 (citations omitted) (emphasis added). Further, the court in *Simmons* explicitly recognized that an employee's required showing under a "cat's paw" theory of liability will vary depending upon the stringency of the ultimate causation element at issue. *Id.* ("Although we apply the subordinate bias doctrine to age discrimination cases, the ADEA requires more than what must ordinarily be proven under an analogous Title VII or USERRA action.").

she needed to get her resume together. The ALJ also relied upon Moncallo's testimony that it was normal for new supervisors to consult with old supervisors regarding employee performance. Moncallo further testified that she did not discuss with Gan whether she knew about the ethics complaint or advise Gan she should not be seeking Owen's input into Brown's performance. The ALJ also relied on Gan's deposition testimony that she had a high opinion of Owen and relied on her for input into personnel matters. Jewell's deposition testimony was similar. He testified that he discussed the employees under his supervision in his new position with Owen, who told him Brown "had received a less-than-perfect performance appraisal."

Undoubtedly, the inference the ALJ drew from this testimony, that Owen biased Gan and Jewell against Brown, is not the only possible inference which could have been drawn. The ALJ could have chosen, as Lockheed urges, to place more weight on Gan's testimony that Owen was merely a peer with whom she did not maintain a personal relationship, or on Jewell's testimony that Owen was careful not to divulge too much information about Brown and "wanted [him] to evaluate the situation for [him]self."[11] The possibility of drawing different inferences from the administrative record, however, is a grossly insufficient basis

---

[11]Alternatively, the ALJ could have construed Jewell's testimony as further corroboration of Brown's poisoning theory—when Owen told Jewell that Brown had problems with her performance evaluations, Owen conspicuously failed to disclose her own potential biases in making that assessment.

to disturb an agency's findings on appeal. *Trimmer*, 174 F.3d at 1102. Based on the evidence in the administrative record, a reasonable fact finder could easily conclude Brown's ethics report was a contributing factor in her ultimate termination from Lockheed. The Board's conclusions as to causation are therefore not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

F.    Remedy

Finally, Lockheed argues the Board's award of $75,000 to Brown as non-economic compensatory damages for her emotional pain and suffering, mental anguish, embarrassment, and humiliation was not authorized by 18 U.S.C. § 1514A(c)(2) and that the Board's damage award was otherwise unsupported by substantial evidence. 18 U.S.C. § 1514A(c)(2), however, provides that relief "shall *include*" the relief specifically enumerated in that subsection, indicating it was not meant as an exhaustive list of all of the relief available to a successful claimant. Moreover, § 1514A(c)(1), provides that a prevailing employee "shall be entitled to all relief necessary to make the employee whole." Lockheed devotes all of four sentences to its argument that the relief awarded is unsupported by substantial evidence. We would thus be justified in disregarding this argument altogether. *ClearOne Commc'ns, Inc. v. Bowers*, 651 F.3d 1200, 1213 (10th Cir. 2011). Respondent nonetheless concedes it may now be necessary for the Board to quantify its award of back pay, medical expenses, and attorney's fees, and to

reexamine its award of reinstatement to the extent an appropriate position for Brown at Lockheed no longer exists. We therefore remand the matter to the agency to make those determinations.

## IV.   Conclusion

For the forgoing reasons, the decision of the Board is **affirmed** and the matter **remanded** to the agency for further proceedings not inconsistent with this opinion.