KELLY, Circuit Judge,
concurring in part and dissenting in part.
Although I agree with much of the court’s analysis, I dissent with respect to whether certain EPA actions were arbitrary and capricious. See Ct. Op. Pt. IV(A) (analyzing the EPA’s calculations of baseline emissions and its determination regarding the technical feasibility of the smaller scrubbers on which it based its eost/benefit analysis). Therefore, I would grant the petition for review.
As an initial matter, the court states that “[w]e review these challenges [to the EPA’s FIP] under the same arbitrary and capricious standard we used to evaluate the EPA’s rejection of the SIP.” Ct. Op. Pt. IV. The court notes, however, that “we do so while recognizing this requires a slightly different perspective: evaluating the EPA’s own choices under the guidelines, as opposed to evaluating its choice to reject the Oklahoma SIP under the guidelines.” Id.; see also id. at Pt. 111(B), n. 7 *1225 (“We recognize that the EPA has less discretion when it takes actions to reject a SIP than it does when it promulgates a FIP.”). That may usually be the case, but here the EPA rejected Oklahoma’s SIP and promulgated its own FIP in the same rulemaking action. Many of the same reasons for rejecting the SIP were used to justify the FIP. Therefore, to the extent it makes a difference, I am not convinced we owe any more deference to the EPA in evaluating these challenges than we would if this action were solely a rejection of a state SIP.
The EPA rejected Oklahoma’s cost estimates for scrubbers and provided two options of its own. These options arbitrarily and capriciously (1) assumed OG & E would burn coal they are not burning and have no plans to burn and (2) used scrubbers that do not fit and are not technically feasible.
For purposes of the cost benefit analysis, the Control Cost Manual (CCM) requires that anticipated annual emissions be calculated based upon past actual emissions. 40 C.F.R. pt. 51, App. Y(IV)(D)(4)(d). The EPA ignored the historical emissions baseline in Option 1. OG & E has been using low-sulfur coal and its continued use would have resulted in scrubbers removing about 14,000 tons of S02 per year at each affected power plant. JA 1106. The EPA, however, assumed that OG & E would begin using high-sulfur coal which would result in the removal of between roughly 43,000 to 46,000 tons of S02 per year at each affected power plant. Id. at 1106, 1513-14. Petitioners commented that any assumption by the EPA of a change in coal was improper and unsupportable. See id. at 1088, 1096-99 (OG & E EPA comments); see also id. at 300-02, 313 (OG & E state comments). Knowing these calculations violated the manual, the EPA developed Option 2.
Option 2 was based on OG & E’s continued use of low-sulfur coal — the correct emissions baseline as required by the CCM. However, the EPA changed the size of the scrubbers to smaller, less expensive ones. Id. at 1514-16. Petitioners argued extensively that these smaller scrubbers were technically infeasible. See, e.g., id. at 1099-1102. In particular, the comments point out the size of a scrubber is not dependent on the type of coal used but on gas flow and the maximum potential heat input. Id. at 1101-02, 1144 (OG & E EPA comments); see also id. at 384-430 (OG & E state comments).
EPA admitted in response that the type of coal alone does not affect scrubber size and its estimate for a smaller scrubber was a result of oversimplification. See id. at 1283-84. Therefore, the only question is whether the EPA provided support for the technical feasibility of the smaller scrubbers it ultimately required. The EPA, however, relies almost exclusively on a cost model by OG & E’s consultant Sargent & Lundy in a different action and its statements that the amount of S02 removed can in fact affect scrubber size at least somewhat. See id. at 1283, 1348. This report does not describe why it matters or how it would affect the size of the scrubbers in this case.
The EPA rejected Oklahoma’s evidentiary support with no clear evidence of its own to support its contrary conclusion. Usually the court grants deference to the EPA’s technical determinations. See San Juan Citizens Alliance v. Stiles, 654 F.3d 1038, 1045 (10th Cir.2011). The EPA deserves no such deference, however, where it does not support a conclusion contradicting Oklahoma’s first, reasonable, detailed technical conclusion. See JA 384-430; Lockheed Martin Corp. v. Admin. Review Bd., U.S. Dep’t of Labor, No. 11-9524, 717 F.3d 1121, 1128-29, 2013 WL 2398691, at *1226 *3 (10th Cir. June 4, 2013). Therefore I would conclude that the failure of the agency to provide any evidence that a significantly smaller scrubber was sufficient to meet OG & E’s needs is arbitrary and capricious.
Finally, it is worth noting that the EPA’s regional haze program is distinct in the amount of power given to the states. See, e.g., Train v. Nat. Res. Def. Council, Inc., 421 U.S. 60, 79, 95 S.Ct. 1470, 43 L.Ed.2d 731 (1975); 70 Fed.Reg. 39,104, 39,137 (July 6, 2005) (“[H]ow states make BART determinations or how they determine which sources are subject to BART” are among the issues “where the Act and legislative history indicate that Congress evinced a special concern with insuring that States would be the decision makers.”). There are a number of reasons for this approach, not the least of which is that its goals and standards are purely aesthetic rather than directly related to health and safety. The EPA’s rule here requires OG & E to make a $1.2 billion dollar investment over the next five years that will, even under EPA’s estimate, result in no appreciable change in visibility. Moreover, there is no evidence this investment will have any effect whatsoever on air quality. It surely will, however, result in adverse changes to what Oklahoma ratepayers will pay for electricity.
Although the EPA has at least some authority to review BART determinations within a state’s SIP, it has no authority to condition approval of a SIP based simply on a preference for a particular control measure. Texas v. EPA, 690 F.3d 670, 684 (5th Cir.2012); see EME Homer City Generation, L.P. v. EPA, 696 F.3d 7, 29 (D.C.Cir.2012) (reviewing a different rule and concluding that the CAA “prohibits EPA from using the SIP process to force States to adopt specific control measures”). Oklahoma considered the cost and resulting benefit of such a large investment in scrubbers, and its conclusion was not unreasonable.
Assuming the EPA has authority to review Oklahoma’s SIP in the manner it did, its rejection of the SIP and promulgation of its own FIP was arbitrary and capricious. Accordingly, I respectfully dissent on this issue.