**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 11, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

ADRIENNE WAGNER,

      Plaintiff - Appellant,

v.

BANK OF AMERICA CORPORATION,
d/b/a Bank of America N.A.;
LANDSAFE APPRAISAL,

      Defendants - Appellees.

No. 13-1347
(D.C. No. 1:12-CV-00381-RBJ)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **LUCERO**, and **HOLMES**, Circuit Judges.

Adrienne Wagner appeals the district court's grant of summary judgment to Bank

of America and its wholly owned subsidiary, LandSafe Appraisal Services, Inc.

Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

---

      * This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 32.1.

# I

Wagner worked as a staff appraiser for LandSafe from April 2008 until she was terminated on May 9, 2011. Wagner worked from home and communicated with supervisors largely via email. She received generally positive employee evaluations during her time at LandSafe, but she was admonished on several occasions by supervisors about the inappropriate and often combative tone of her electronic communications starting in May 2009. On March 14, 2011, Wagner was issued a "FINAL Written Warning" for inappropriate behavior. The warning stated that Wagner "continue[d] to exhibit behavior that is considered inappropriate in the workplace," including "combative" and "insubordinate" communications. It specifically referenced an email exchange several days prior in which Wagner refused direction from a supervisor. The warning was signed by manager Clay Vescera and Wagner herself, and stated that "[f]ailure to meet expectations may result in further disciplinary action up to and including termination."

Approximately two months later, another of Wagner's supervisors, Susan Schroeder, identified a number of issues with an appraisal Wagner had submitted. Schroeder wrote, "can you let me know if the 'play court' with lights next door has any impact on marketability of the subject?" Wagner responded, "I can't prove any, can you?" Schroeder replied, "[i]t is not my responsibility to 'prove' anything . . . it is your responsibility to, at the bare minimum to [sic] discuss play court with lights next door and that there is not market data to support a downward external obsolescence adjustment due

to a 'nuisance' impact." Wagner's response to Schroeder included the following: "I would like to remind you, Susan, to be careful about making false and malicious accusations against appraisers. Under the Rule of Law in this country, the burden of proof is upon you, my accuser. Any more accusations about fraud can cause you serious legal consequences."

Schroeder forwarded that email to Vescera and another manager, Conrad North. Vescera called Wagner for her side of the story. During a brief phone call, Wagner said she was "not at all comfortable having this conversation with you at this time," and when Vescera stated that they could "catch up later," Wagner said she was "not sure that I'll want to talk with you then, either." Vescera decided to terminate Wagner, and did so on May 9.

During the course of her employment, Wagner heard that two fellow appraisers received help from their spouses.[1] One of the appraisers told Wagner, during a conversation that occurred before she began working for LandSafe, that his spouse assisted him. And in January 2009, she overheard another appraiser say that "his wife was doing work for him and he could turn in four or five [appraisals] a day." Wagner did not ask either appraiser for more detail about the kind of work their spouses were

---

[1] The Uniform Standards of Professional Appraisal Practice ("USPAP"), the set of guidelines governing licensed appraisers, requires that an appraiser report "significant appraisal assistance," though it does not define that term. We assume, without deciding, that it would be unethical and violative of USPAP for a licensed appraiser to allow an unlicensed individual to perform appraisal work on his behalf.

performing. However, she made a total of four reports to superiors regarding what she perceived as the improper assistance received by her coworkers: (1) a statement to North in January 2009; (2) a report to two different supervisors on September 2, 2009; (3) a report to Vescera on November 22, 2010; and (4) a conversation with Vescera in late February 2011. Wagner claims that Vescera said during the February 2011 conversation that he did not "see anything wrong with using wives to do appraisal work." After she was terminated, Wagner submitted similar complaints to a state licensing board and filed a whistle-blowing complaint with the Securities and Exchange Commission.

Wagner filed suit in the United States District Court for the District of Colorado, alleging that LandSafe retaliated against her for making reports about the improper assistance received by her co-workers. She claimed that the reasons given for her firing were a pretext and that she was actually terminated for reporting unlawful conduct in violation of 15 U.S.C. § 78u-6(h)(1)(A), which provides: "No employer may discharge, demote, suspend, threaten, harass, directly or indirectly, or in any other manner discriminate against, a whistleblower in the terms and conditions of employment because of any lawful act done by the whistleblower." She also alleged that her termination constituted wrongful discharge in violation of public policy, a Colorado state-law claim. The district court granted summary judgment to Bank of America on both claims. Wagner filed a timely notice of appeal. On appeal, she challenges only the dismissal of her state-law claim.

## II

"We review the district court's summary judgment order de novo, and apply the same legal standards as the district court." Doe v. City of Albuquerque, 667 F.3d 1111, 1122 (10th Cir. 2012). Summary judgment is appropriate if, viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Commercial Union Ins. Co. v. Sea Harvest Seafood Co., 251 F.3d 1294, 1298 (10th Cir. 2001).

Wagner alleges that her firing violated Colorado law as a termination contrary to public policy. There are four elements to her prima facie case:

> [1] that the employer directed the employee to perform an illegal act as part of the employee's work-related duties or prohibited him from performing a public duty or exercising an important job-related right or privilege; [2] that the action directed by the employer would violate a specific statute on the public health, safety or welfare, or would undermine a clearly expressed public policy relating to the employee's basic responsibility as a citizen or his right or privilege as a worker. The plaintiff must also show [3] that the employee was terminated as the result of refusing to perform the act directed by the employer, and [4] that the employer was aware or reasonably should have been aware that the employee's refusal to comply with the employer's order was based on the employee's reasonable belief that the action ordered was illegal, contrary to clearly expressed statutory policy relating to the employee's duty as a citizen, or violative of the employee's legal right or privilege as a worker.

Barlow v. C.R. England, Inc., 703 F.3d 497, 507 (10th Cir. 2012) (quotation omitted, brackets in original); see also Martin Marietta Corp. v. Lorenz, 823 P.2d 100, 109 (Colo. 1992) (en banc).

The district court assumed without deciding that if Wagner had been fired because

- 5 -

she reported a significant USPAP violation, such a termination would be contrary to Colorado public policy. We too will assume that Wagner has satisfied the first two prongs of her prima facie case and proceed directly to the third prong: whether Wagner was "terminated as the result of" her reporting. Barlow, 703 F.3d at 507. To survive summary judgment, Wagner was required to produce evidence suggesting that her reports were at least part of a mixed motive for her firing. Id. at 510. We agree with the district court that Wagner did not do so.

Wagner conceded below that the timing of her termination was the only basis for her belief that she was fired for reporting that other appraisers were being assisted by their spouses. In analyzing causation in employment cases, we often rely on temporal proximity between the protected act and termination. See Trujillo v. PacifiCorp, 524 F.3d 1149, 1157 (10th Cir. 2008) ("Close temporal proximity is important in establishing a prima facie case . . . ."). But this court has frequently granted summary judgment to employers on causation grounds based on temporal attenuation between protected conduct and termination. See id. at 1157 n.5 (collecting cases). The gap between Wagner's final report in late February 2011 and her termination on May 9, 2011 is insufficient to establish a causal connection absent other supporting facts, particularly in light of the undisputed events that occurred in the interim. See Meiners v. Univ. of Kan., 359 F.3d 1222, 1231 (10th Cir. 2004) (no reasonable inference of retaliatory motive in light of temporal gap of approximately two-and-one-half months and intervening actions). As in Meiners, we cannot ignore the communications between plaintiff and

defendant in evaluating the summary judgment record. See id. ("any inference as to retaliatory motive raised by temporal proximity is undermined by" a communication that occurred just prior to termination).

On appeal, Wagner claims that the causation issue should have been resolved by a jury because "the conduct leading up to her discharge began," Lockheed Martin Corp. v. Admin. Review Bd., 717 F.3d 1121, 1137 (10th Cir. 2013), with the issuance of the final warning from Vescera. We disagree. The final warning issued to Wagner referenced conduct that had previously been the subject of employee reviews, and there is no evidence linking the consistent warnings to Wagner about inappropriate tone to her reports about her fellow appraisers. Wagner also contends that LandSafe personnel intentionally baited her into responding inappropriately to several email communications so that her responses could be used as an excuse for termination. But she does not provide a record citation to support this assertion and our independent review of the record indicates no "specific facts showing that there remains a genuine issue for trial." Hinds v. Sprint/United Mgmt. Co., 523 F.3d 1187, 1198 n.6 (10th Cir. 2008) (quotation omitted).

## III

**AFFIRMED**.

Entered for the Court


Carlos F. Lucero
Circuit Judge